**CENTRAL BEARINGS CO., Inc., Appellee,**

v.

**WOLVERINE INSURANCE COMPANY, Appellant.**

**No. 53900.**

Supreme Court of Iowa.

Sept. 2, 1970.

Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellant.

Janss, Dreher, Wilson & Adams, Des Moines, for appellee.

BECKER, Justice. ·

Plaintiff corporation sues defendant for breach of insurance policy contract in that it failed to defend and indemnify it against loss due to a claim and eventual lawsuit brought against it. The action was for damages resulting from the failure of a cable sold by insured in the regular course of its business. Defendant filed answer admitting issuance of the insurance policy to defendant but denying liability. Defendant asserted the policy did not cover the claim and eventual loss by plaintiff. After the issues were joined defendant filed motion for adjudication of law points. The court ruled in favor of plaintiff, held the loss was covered by the policy in question and entered judgment against defendant. Defendant appeals. We reverse.

Part of plaintiff's business includes the sale of steel cable used in operating heavy equipment. Plaintiff sold a ⅝ inch non-rotating cable to a customer. About two months later the cable, while being used on a pile driver, broke and fatally injured Earl W. Kuhnke. Mr. Kuhnke's administrator sued the manufacturer and plaintiff as retailer. The administrator's petition was bottomed on (1) negligence, (res ipsa loquitur); (2) negligence, (specifications);[1] and (3) breach of warranty.

Defense was tendered to insurer and declined. Plaintiff settled the action against it during trial by paying $2125 as its share of the settlement with decedent's estate. Costs of defense were $4073.70. The question of damages is not at issue here.

The insurance contract was in effect at all times material to the accident. The policy was prepared to afford protection against four types of hazards.[2] Only the

---

1. "(A) In failing to make all ordinary and necessary tests and inspections * * *;

"(B) In supplying a chattel for another to use, when it knew or should have known that it was likely to be dangerous for the use for which it was supplied;

"(C) In failing to exercise reasonable care to inform those likely to use * * *;

"(D) In failing to exercise reasonable competence * * * when the purchaser of said cable bought it as safe for use in reliance on said defendant's profession of competence and care.

"(E) In selling said cable without proper inspection or tests, * * *."

2. "Insuring Agreements

"I Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

"Definition of Hazards

"Division I—Premises—Operations. The ownership, maintenance or use of the premises, and all operations necessary or incidental thereto.

Premises—Operations Coverage was purchased. There is no question of misrepresentation, misunderstanding or overreaching in connection with the issuance of the policy. The sole question here is: Does the policy as issued cover the risk involved, the loss sustained and the expenses in connection therewith?

I. The rules of construction of insurance policies are well established. The insurance policy is a contract which must be construed as a whole. The words used must be given their ordinary, not technical, meaning to achieve a practical and fair interpretation. Youngwirth v. State Farm Mutual Auto. Ins. Co., 258 Iowa 974, 140 N.W.2d 881, 883.

If the words are fairly susceptible to two interpretations the one which will sustain the insured's claim will be accepted. Thus the policy will be strictly construed against the insurer. State Auto. & Cas. Underwriters v. Hartford Acc. & Ind. Co. (Iowa, 1969), 166 N.W.2d 761. This rule is amplified by the statement that the court should ascertain what an insured as a reasonable person would understand the policy to mean, not what the insurer actually intended. Goodsell v. State Auto & Cas. Underwriters, 261 Iowa 135, 153 N.W.2d 458.

Stated otherwise, the climate under which an insurance policy is examined favors imposition of coverage largely because the carrier drew the contract and has the expertise in the field. However, if after construing both the policy in question, the pleadings of the injured party and any other admissible and relevant facts in the record, it appears the claim made is not covered by the indemnity insurance contract issued, the insurer has no duty to defend or indemnify. Hagen Supply Corp. v. Iowa National Mutual Ins. Co. (8 Cir. 1964), 331 F.2d 199, 203, 204 and authorities cited therein. If such be the case, the words and phrases of the policy should not be strained to impose liability that was not intended and not purchased.

II. Plaintiff argues that defendant's duty to defend does not in all cases and under all circumstances depend solely on the terms of the policy and the allegations in the petition filed against the insured. We agree.

" * * * Where there are facts extraneous to the allegations in the complaint which are known either to insurer or insured which, if proved, make out a case against the insured which is covered by the policy, the duty to defend exists. We do not deem it necessary to give further consideration to this exception and the cir-

" * * *
"Division 4—Products—Completed Operations. (1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in Division 1 of Item 4 of the declaration excludes any part of the foregoing; * * * (2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or

defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph; * * *
"II Defense, Settlement, Supplementary Payments. With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * * *."
Clauses deemed immaterial to this decision are deleted.

cumstances which may bring it into play because no basis for application of the exception can possibly exist here. * * *." Hagen Supply Corporation v. Iowa National Mutual Ins. Co., supra; Annotation 50 A.L.R.2d 458, 501.

■ We also agree with plaintiff that in considering the petition of the injured party all facts admissible under the allegations should be considered. In other words, as indicated by Judge Hand in Lee v. Aetna Casualty & Surety Co. (2 Cir., 1949), 178 F.2d 750, 752:

"Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured. * * *." Blohm v. Glens Falls Insurance Co. (1962), 231 Or. 410, 373 P.2d 412; 44 Am.Jur., 2d, Insurance, §§ 1540, 1541, pages 422–424.

We therefore assume the injured litigant might have proved its case under either of the three theories pled. Also we assume the charge of failure to warn might have been developed to be a charge of misrepresentation.

■ III. The problem presented by this case is new to this court. We find two lines of authority in other jurisdictions that are to us irreconcilable. A large number of courts under varying fact situations have imposed liability in analogous cases: Brant v. Citizens Mutual Automobile Ins. Co. (1966), 4 Mich.App. 596, 145 N.W.2d 410 (sale of natural gas heater for L.P. gas heater); Atkins v. Hartford Accident & Indemnity Co. (1967), 7 Mich.App. 414, 151 N.W.2d 846 (wrongful sale of habit-forming drugs); Employers Liability Assur. Corp. v. Youghiogheny & O. Coal Co. (8 Cir. 1954), 214 F.2d 418 (defective coal car door); Lessak v. Metropolitan Casualty Ins. Co. (1958), 168 Ohio St. 153, 151 N.E.2d 730 (illegal sale of B.B. shot to minor); St. Paul Fire and Marine Ins. Co. v. Coleman (8 Cir. 1963), 316 F.2d 77 (gas spilled into bilge of boat); Cf. Eastcoast Equipment Co. v. Maryland Casualty Co. (1966), 207 Pa.Super. 383, 218 A.2d 91 (representation that the cable was safe for use on crane); Reed Roller Bit Co. v. Pacific Employers Ins. Co. (5 Cir. 1952), 198 F.2d 1 (representation that abrasive wheel could be safely used).

There is another large group of cases in which the courts have refused to extend coverage because the loss was not covered by the policy: Hagen Supply Corp. v. Iowa National Mut. Ins. Co. (8 Cir. 1964), 331 F.2d 199 (sale of tear gas device); Blohm v. Glens Falls Ins. Co. (1962), 231 Or. 410, 373 P.2d 412 (sale and representation as to lawn mower); Standard Acc. Ins. Co. v. Roberts (8 Cir. 1942), 132 F.2d 794 (installation of gas refrigerator); Tidewater Associated Oil Co. v. Northwest Casualty Co. (9 Cir. 1959), 264 F.2d 879 (delivery of gas rather than stove oil as ordered); Service Welding & Machine Co. v. Michigan Mut. Liability Co. (6 Cir. 1962), 311 F.2d 612 (improper loading truck trailer); Inductotherm Corp. v. N. J. Mfrs. Cas. Ins. Co. (1964), 83 N.J.Super. 464, 200 A.2d 358 (failure of industrial crucibles); Smith v. Maryland Casualty Co. (1967), 246 Md. 485, 229 A.2d 120 (sale of defective sling shot); Cf. Lee v. Aetna Casualty & Surety Co. (2 Cir. 1940), 178 F.2d 750 (fall down elevator shaft). Neither of the above lists of cases is meant to be exhaustive.

In most of the cases imposing liability the original wrongful act is treated as an "accident" within the meaning of that term as used in the policy. This is illustrated in Brant v. Citizens Mut. Auto. Ins. Co., supra, relied upon by the trial court in which it is said:

"The fact situation of the instant case is actually composed of two incidents, both of which we regard as 'accidents.' The first 'accident', occurred when the appellants here sold Mr. Hughes the wrong heater according to the complaints in the suits against the Brants. The issue of

whether this sale was a question of mistake, negligence or breach of warranty, is not before this court. * * *

"The second 'accident' occurred when the natural gas heater was installed to the wrong type of gas supply for it and injury resulted therefrom. Again, the question of ultimate liability is not before this court. However, according to Michigan law, this too falls within a definition of 'accident.' * * *." (loc. cit. 145 N.W.2d at page 412).

The Michigan court reasoned that since the first "accident" was complete before the stove left the premises, the Products—Completed Coverage exclusion did not apply.

The other line of reasoning treats the initial wrongful act as a pre-existing condition or cause which preceded the accident in question. Under these cases the "accident" is treated as the unexpected or untoward event which immediately preceded the injury. If this event occurred after the operation was complete the coverage must be found under the Products—Completed Operations clause or not at all. Blohm v. Glens Falls Insurance Co. (1962), 231 Or. 410, 373 P. 412, 416, illustrates this line of reasoning:

"In the case of Bitts v. General Accident Fire & Life Assur. Corp., 282 F.2d 542, the United States Court of Appeals for the Ninth Circuit, in interpreting a clause defining 'products hazard' which reads identically with the clause in the defendant's policy, stated:

" ' * * * Here the excluded hazard is not the negligent act proximately causing injury. It is, by express definition, "the handling or use of" the product sold. It cannot be denied that this was the cause in fact of the injury. Unlike the cited California cases, the clause here expressly provides exclusion "if the *accident* occurs after insured has relinquished possession * *." (Emphasis supplied.) It is the occurrence of the accident itself and not of its negli-

gent cause which is expressly made the determining circumstance. In the area of products liability this is readily understandable. In all such cases the cause of the accident (in the sense of the negligent act or omission which has proximately resulted in injury) has antedated the delivery of the article to the purchaser. To construe this clause as applying only when the proximate cause had occurred after delivery would, of course, result in no effective exclusion of products liability whatsoever.

" 'Bonell seems to suggest that the duty to warn is a negligent act somewhat apart from products liability and that the latter should be construed to apply only to cases of defective merchandise. The definition of products hazard, as set forth in the policy, not only includes the existence of any condition in a product or of a warranty in a product, but also the handling or use of a product. It cannot be as narrowly defined as Bonell contends. Further, we note that, historically, failure to warn is one of the bases for holding a vendor of products liable for negligence, Huset v. J. I. Case Threshing Machine Co., 8 Cir., 1903, 120 F. 865, 871, and currently seems to occupy a place of considerable importance in the law of products liability. See 2 Harper & James, The Law of Torts, 28.75; Dillard & Hart, Product Liability: Directions for Use and the Duty to Warn, 41 Va.L.Rev. 145 (1955).' "

Bitts v. General Accident Fire & Life Assurance Corp., supra, relies on Tidewater Associated Oil Co. v. Northwest Casualty Co. (9 Cir. 1959), 264 F.2d 879, 882, 883, which not only treats the products liability problem but also the completed operations problem as follows:

"But if it should be assumed, as appellant contends, that the 'cause' of this accident within the meaning of the endorsement was the use of faulty equipment or some other negligence by the truck driver, we nevertheless conclude that there is no policy coverage.

"It is true that under this assumption no exclusion would be effected under the first part of the endorsement relating to products, since the 'cause' would not have taken place 'after the Insured had relinquished possession of such goods or products * *.' However, the accident would still be excluded under the last part of the endorsement, which pertains to 'operations.' It will be noted that under this latter provision an accident caused by 'operations' is excluded from policy coverage if the accident occurs after the operations have been completed or abandoned at the place of occurrence.

"The acts of the truck driver in filling the oil can and delivering it to Mrs. Buffington were 'operations' as that word is used in the endorsement. The accident occurred after these 'operations' had been 'completed.' It was therefore expressly excluded from coverage under the last part of the exclusion endorsement."

The divergence in thinking is due to the two views of the definition of accident. We shall not repeat the oft quoted definitions of the term. Our own cases point up the futility of attempting an all-inclusive definition and underline the necessity of interpreting the term within the context of the document in which it is used. See Weaver, J., in Lickleider v. Iowa State Trav. Men's Assn., 184 Iowa 423, 428, 168 N.W.2d 884 and Comfort v. Continental Casualty Co., 239 Iowa 1206, 34 N.W.2d 588.

For the purpose of interpretation of this contract we adopt the interpretation of the Arizona Court of Appeals in Century Mut. Ins. Co. v. Southern Arizona Aviation, Inc. (1968), 8 Ariz.App. 384, 446 P.2d 490, 492, which states:

" * * * The word 'accident', as used in insurance policies, has frequently been defined as ' " * * * an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force * * *" ' Albuquerque Gravel Prod. Co. v. American Emp. Ins. Co., 282 F.2d 218, 220 (10th Cir. 1960). And see Malanga v. Royal Indemnity Company, 101 Ariz. 588, 422 P.2d 704 (1967). As used in this policy, giving to the word the meaning which a man of average understanding would, we think it clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune."

IV. The parties strongly argue another matter which is implicit in the two lines of cases examined. Plaintiff argues the premises coverage is broader than the Products—Completed Operations coverage; there can be, and in this case was, an overlapping of coverage. Defendant contends the four coverages included in the policy are intended to be, and are, mutually exclusive. The contract as a whole supports defendant's contention. Under our rules of interpretation it is incumbent on the policy draftsman to make this concept clear enough so that a reasonable purchaser of insurance coverage would understand such intention. While this area can never be free from doubt under limitations of the English language, we believe the intent to be reasonably clear.

Whether this problem is approached from the standpoint of manifestation of mutual assent by contracting parties (meeting of the minds) or purchase of a pre-prepared contract; i. e., a commodity (which seems more realistic), the result is the same. Modern tort and warranty litigation and the complexity of modern business require complex offerings of insurance protection. It is not unreasonable to give the effect intended by the draftsman if it is reasonably clear a purchaser would understand the coverage offered.

No such document is immune from attack by use of various canons of interpretation. The fact that the industry has continued to attempt to clarify the language (as plaintiff points out in its appendix material) should not obscure the original intent of the offer and acceptance; i. e., of the protection actually being bought and sold.

We conclude the coverages here were designed to operate "back to back", to be mutually exclusive and to prohibit overlapping. We think this is the sense of the numerous cases cited where coverage was denied. Cf. 7A Appleman, Insurance Law and Practice, § 4508, page 98.

IV. In summation we think the insured as a reasonable person would understand the policy coverage purchased meant the insured was not covered for loss if the "accident" with concomitant damage to a victim occurred away from the premises and after the operation or sale was complete. For such protection the insured would have to purchase the additional coverage offered by the terms of the policy. Cf. 7A Appleman, Insurance Law and Practice, § 4508, page 98; 12 Couch on Insurance, §§ 44.434–5, page 19 et seq. In this we differ from the trial court's conclusion because we are more fully persuaded by a different line of authority. We therefore reverse with instructions to dismiss plaintiff's petition at plaintiff's cost.

Reversed.

All Justices concur.