Paul McANDREWS, Appellee,

v.

FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

No. 83–121.

Supreme Court of Iowa.

June 13, 1984.

James A. Pugh of Morain, Burlingame & Catterall, West Des Moines, for appellant.

Michael J. Green of Carney, Hudson, Williams & Green, Des Moines, for appellee.

LARSON, Justice.

The issue in this case is whether Farm Bureau Mutual Insurance Company was required by its policy to defend its insured, Paul McAndrews, in a civil action for assault and battery brought by a third party, William Clemons. The district court concluded that, while the policy excluded coverage for intentional acts, there was a "potential for coverage" under the policy, and that was sufficient to require Farm Bureau to furnish a defense. The court of appeals affirmed, on the ground that, if there is a "possibility" that the intentional-act exclusion of the policy would not apply, the defense must be provided. We vacate the court of appeals opinion and reverse the district court.

Farm Bureau insured McAndrews under its "Country Squire IV," a general farm liability policy. It provided personal liability protection under Coverage "L" as follows:

This Company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an *occurrence.* This Company shall have the right and duty, at its own expense, to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigations and settlement of any claim or suit as it deems expedient.

(Emphasis added.) An "occurrence" as referred to in Coverage "L" is defined in the policy as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage."

The policy also provided an exclusion for any "bodily injury or property damage which is either expected or intended from the standpoint of the insured." The fighting issue here is whether that exclusion applies. Farm Bureau argues that because of the exclusion it could not be required to indemnify McAndrews for any judgment rendered against him in the assault and battery case; hence, it was not obliged to furnish a defense. McAndrews argues that there was at least a possibility the "intentional act" exclusion would not apply based on his claim of self-defense and, therefore, Farm Bureau was required to defend him.

The factual background began with a dispute at a county fair involving cattle being shown by the sons of McAndrews and Clemons. Words erupted into action resulting in the assault and battery suit against McAndrews who tendered the defense to Farm Bureau. McAndrews briefly outlined the event in his notice of loss submitted to Farm Bureau:

At Fairtime I exchanged words with William Clemons and a scuffle followed and I injured him. Wm. Clemons took wild swing at insured and insured acted in self defense and injured Wm. Clemons.

(McAndrews' claim that Clemons had swung first is apparently not challenged.)

Upon Farm Bureau's refusal to defend, McAndrews conducted his defense through private counsel. Despite his self-defense claim, a verdict for $2000.00 was returned by the jury, and judgment was entered against him. McAndrews then filed this suit alleging breach of the contractual duty to defend and obtained a

judgment for $3032.45 for the cost of his defense in the assault and battery action. (Originally, he also sought indemnity from Farm Bureau for the $2000.00 judgment, but he dismissed that claim.) The court of appeals affirmed.

[An insurer's] duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial.

(Footnote omitted.) 7C J. Appleman, *Insurance Law and Practice* § 4684, at 83 (Berdal ed. 1979).

The "facts at the outset of the case" under this test have traditionally been those alleged in the petition in the suit against the insured. *Id.* § 4683, at 42. *See also Chipokas v. Travelers Indemnity Co.,* 267 N.W.2d 393, 395 (Iowa 1978) ("In deciding whether an insurer has a duty to defend, the first query is into plaintiff's pleadings to see if the pleadings state facts which bring the claim within the liability covered by the policy.")

■ The scope of inquiry, however, must sometimes be expanded beyond the petition, especially under "notice pleading" petitions which often give few facts upon which to assess an insurer's duty to defend. In *Central Bearings Co. v. Wolverine Insurance Co.,* 179 N.W.2d 443 (Iowa 1970), we recognized the need to supplement the facts in the pleadings saying that the insurer has no duty to defend "if after construing both the policy in question, the pleadings of the injured party *and any other admissible and relevant facts in the record,* it appears the claim made is not covered by the indemnity insurance contract...." *Id.* at 445. (Emphasis added.) A court may also take judicial notice of facts bearing on policy coverage. Appleman, *supra* § 4684.01, at 90.

An insurer cannot, of course, await the outcome of the trial to furnish the defense if potential liability appears at an earlier stage. Appleman, *supra* § 4684, at 83, 85.

■ On the other hand, an insurer is not required to provide a defense when no facts presently available to it indicate coverage of the claim merely because such facts might later be added by amendment or introduced as evidence at the trial. If the totality of facts fail to disclose potential coverage, an insurer might proceed in two ways: it could initiate a declaratory judgment action against its insured, *see, e.g., Farm Bureau Mutual Insurance Co. v. Sandbulte,* 302 N.W.2d 104 (Iowa 1981), or it might elect to do nothing, running the risk, of course, that its insured will seek indemnity if coverage is established at trial. *See Grenga v. National Surety Corp.,* 113 R.I. 45, 49, 317 A.2d 433, 436 (1974); Appleman, *supra* §§ 4683, 4685.01, at 53, 133.

In the present case, we look to the pleadings and all other "admissible and relevant facts," *Central Bearings,* 179 N.W.2d at 445, to resolve the question of Farm Bureau's duty to defend. If it appears from those facts that there was potential for coverage under the policy, McAndrews must prevail.

■ The petition against him alleged, and McAndrews did not dispute, that he had struck Clemons with his fist and knocked him down. McAndrews merely claims there was at least a possibility a fact-finder would not find the act to be "intended," because it was done in self-defense.

In this case, the jury must have concluded McAndrews did not act in self-defense, because it rendered a verdict against him. In assessing the duty to defend, however, we look to the facts as they appeared prior to trial, not as they later developed. We assume, for that purpose, that McAndrews in fact did act in self-defense. This being assumed, was there a potential for coverage under the policy? A considerable number of cases have addressed this issue.

One authority notes that, in some cases, it has been indicated that the insurer cannot refuse to defend a charge of assault and battery since there will always be the possibility of claims or defenses falling within the purview of the policy. Further, whether the insured can or cannot avoid liability on grounds of self-de-

fense has been held to be of no concern to the insurer with respect to its duty to defend; if the insurer failed to investigate, and the insured acted in self-defense, the incident is covered by the policy and insurer is obligated to defend. (Footnotes omitted.) Appleman, *supra* § 4685.01, at 128.

Other cases, which we believe state the preferable view, go the other way. In *Home Insurance Co. v. Neilsen*, 165 Ind. App. 445, 332 N.E.2d 240 (1975), the insured also argued that his striking of the victim was done in self-defense. After noting the intentional act exclusion in the policy, the court stated:

> However, Neilsen [the insured] urges that even under the standard we have accepted, he is entitled to the benefits of coverage because he intended self-defense rather than injury to Smolek.
>
> We disagree. The question of self-defense is a standard of Neilsen's liability to Smolek. It presents an issue of motive or justification for an intentionally caused harm, but it does nothing to avoid the inference of intent to harm that necessarily follows the deliberate blow to Smolek's face.
>
> We recognize that members of the public may well desire to protect themselves through the vehicle of insurance from the cost of defending liability actions where the facts may ultimately exonerate them.
>
> We do not perceive that it would be a violation of public policy to permit an insurance company to defend an action where its insured is excused because he acted in self-defense. It would not even clearly be prohibited from indemnifying for damages caused where the insured actually, but unreasonably, believed the defense was necessary. However, to afford such coverage upon the basis of the policy before us would not be to interpret its ambiguity. We would instead be rewriting the contract agreed to by the parties to provide an additional coverage. This we may not do.

(Citations omitted.) *Id.* at 451–52, 332 N.E.2d at 244. *Briscoe v. Travelers In-*

*demnity Co.*, 18 Wash.App. 662, 667, 571 P.2d 226, 229 (1977) addressed a similar contention:

> Krekeler [the insured] argues that, while he may have intentionally struck Donato, he did so in self-defense not intending to physically injure him. Assuming that Krekeler's defense of self-defense overcomes Donato's claim, it is inescapable that Krekeler intended the movement of his own arm, the clenching of his fist, and the forceful contact between his fist and Donato's body. It belies reason to say that he did not intend to physically injure Donato. Why else the contact between fist and nose? At best, Krekeler can be heard to say that he did not intend the *extent* of Donato's injuries or that he would not have injured Donato had he not begun the altercation.

*Accord, Lockhart v. Allstate Insurance Co.*, 119 Ariz. 150, 152–53, 579 P.2d 1120, 1122–1123 (Ariz.Ct.App.1978); *Heshelman v. Nationwide Mutual Fire Insurance Co.*, —— Ind.App. ——, ——, 412 N.E.2d 301, 303 (1980).

We conclude McAndrews' striking of Clemons was an act excluded from coverage and therefore that Farm Bureau had no duty to defend. Even if we were to conclude, as McAndrews argues, that he had a reason to hit Clemons, *i.e.*, to prevent Clemons from harming him, this would not change the fact it was an intentional act.

We vacate the court of appeals decision and reverse and remand for entry of judgment for Farm Bureau.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED; REMANDED FOR ENTRY OF JUDGMENT FOR FARM BUREAU INSURANCE COMPANY.

All Justices concur except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

I agree with the court that an insurer has a duty to defend whenever there is possible liability to indemnify the insured based on the facts appearing at the outset

of the litigation. I disagree with the court's holding that facts showing a triable issue of self-defense do not establish possible liability under a comprehensive personal liability policy excluding coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured."

Cases from other jurisdictions are divided on the issue. The court chooses to follow one line of authority, but I believe the opposing cases are more persuasive and would follow them. The opposing cases include *Mullen v. Glens Falls Insurance Co.,* 73 Cal.App.3d 163, 140 Cal.Rptr. 605 (1977), *Group Insurance Co. v. Morelli,* 111 Mich.App. 510, 314 N.W.2d 672 (1981), *Kermans v. Pendleton,* 62 Mich. App. 576, 233 N.W.2d 658 (1975), *Farmers Insurance Exchange v. Sipple,* 255 N.W.2d 373 (Minn.1977); *Allstate Insurance Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981), and *Raday v. Board of Education,* 130 N.J.Super. 552, 328 A.2d 17 (1974).

It is well established that when an insurance policy is susceptible to two constructions the policy will be construed in a light most favorable to the insured. Exclusions are thus construed strictly against the insurer. *State Farm Automobile Insurance Co. v. Malcolm,* 259 N.W.2d 833, 836 (Iowa 1977).

The cases demonstrate that the policy in the present case is reasonably susceptible to a construction favoring coverage. As observed by the Nebraska court in *Novak:*

> The cases ... point out that when one acts in self-defense the actor is not generally acting for the purpose of intending any injury to another but, rather, is acting for the purpose of attempting to prevent injury to himself. It can easily be said that such act, though resulting in bodily injury to another, was neither expected nor intended within the terms of the policy.

210 Neb. at 192–93, 313 N.W.2d at 640–41.

This reasoning is consistent with the purpose of a comprehensive personal liability insurance policy. Through broad terms the policy covers the insured's liability for harm caused by unpredictable happenings of daily life. It is logical to exclude coverage for the insured's intentional torts because the harm from those acts is controllable and therefore predictable from the standpoint of the insured. The harm from an assault and battery is thus the kind of expected or intended harm that is within the exclusion. In contrast, a harm resulting from reactive or defensive conduct is not the predictable kind of harm associated with intentional torts. Even though bodily injury or property damage may result from acts done in self-defense, the harm is incidental to the intentional defensive acts rather than an expected or intended result.

I would hold that the language selected by the insurer is susceptible to a construction providing coverage in the present facts. Under this construction the facts ascertained by the insurer at the outset of the litigation established a possible duty to indemnify the insured. Therefore a duty to defend existed, and the trial court was correct in ordering Farm Bureau to indemnify McAndrews for his costs of defense.