The FIRST NATIONAL BANK OF MISSOURI VALLEY, Appellant,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND and Glen Falls Insurance Company, Appellees.

No. 94–2042.

Court of Appeals of Iowa.

Feb. 2, 1996.

Douglas E. Baker and Thomas D. Wulff of Welch, Wulff & Childers, Omaha, Nebraska, and Bradford L. Davis of Davis & Davis Attorneys at Law, Council Bluffs, for appellant.

John P. Mullen and James D. Buser of Gaines, Mullen, Pansing & Hogan, Omaha, Nebraska, for appellee–Fidelity & Deposit Company of Maryland.

Jon J. Puk and J. Joseph McQuillan of Wallentine, O'Toole, McQuillan & Gordon, Omaha, Nebraska, for appellee–Glen Falls Insurance Company.

Heard by HAYDEN, P.J., and CADY and HUITINK, JJ.

HAYDEN, Presiding Judge.

This action was brought by First National Bank of Missouri Valley, Iowa, (Bank) against two insurance companies, Fidelity and Deposit Company of Maryland (Fidelity) and Glen Falls Insurance Company (Glen Falls) for their failure to defend the Bank in a suit brought by Kurtis and Doris Goembel.

The Goembels filed a petition against the Bank alleging it breached a written contract and breached an implied contract of good faith and fair dealing. The petition alleged the Bank's actions were intentional. According to the Goembels, they had borrowed money from the Bank to purchase certain farm property. The Goembels also had a business relationship with the Bank whereby they could borrow money from the Bank using multiple advance (or line of credit) operating notes. The line of credit agreement, entered into in February 1989, provided the Bank would loan the Goembels up to $60,000 for their farming operation. In July 1989 the Bank informed the Goembels it would only lend them an additional $11,700 even though approximately $39,900 remained on the line of credit. In January 1990 the Bank accelerated payment on the notes and demanded payment in full by February 21, 1990.

The Bank had a comprehensive general liability insurance policy with Glen Falls with a policy period from December 2, 1988, to December 2, 1989. The Bank also had a general liability insurance policy with Fidelity with a policy period from December 2, 1989, to December 2, 1990. The Bank notified Glen Falls and Fidelity of the Goembels' lawsuit and requested coverage. Both insurers informed the Bank in writing that review of the petition indicated the policies did not afford coverage for the acts alleged nor was any duty to defend triggered by the action. Both insurers indicated, if the petition was amended or any other information came to light affecting the coverage, the Bank should notify them.

Following a trial on the Goembels' claims, the jury returned a verdict in favor of the Bank. The Bank incurred legal expenses of $32,918.49 defending the action. In September 1993 the Bank filed this action against Glen Falls and Fidelity alleging there was no legal excuse for the insurers' failure to defend the Bank in the suit brought by the Goembels. All parties moved for summary judgment. The court granted the insurers' motion for summary judgment finding the Goembels' suit against the Bank alleged intentional acts, a risk or cause excluded from coverage under the policies. Therefore, the court concluded, the insurers had no duty to defend.

The Bank appeals. First, the Bank claims the district court erred in finding the insurers had no duty to defend because the allegations in the Goembels' petition presented a covered or potentially covered cause of action. More specifically, the Bank maintains the petition could also support two negligence causes of action: breach of duty of good faith and fair dealing and professional negligence. Second, the Bank claims the court erred in finding the insurers could require the Bank to seek out and provide additional information before it would provide a defense. Lastly, the Bank argues the court erred in referring to the outcome of the Goembels' suit in its ruling on the summary judgment motions.

## I. Standard of Review.

■ We review a district court's ruling granting summary judgment for errors at law. Iowa R.App.P. 4. *Lihs by Lihs v. Lihs*, 504 N.W.2d 890, 892 (Iowa 1993). Summary judgment is proper only when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Id.* On review we determine whether a genuine issue of fact exists and whether the law was applied correctly. *Id.; see also House v. Moulder*, 469 N.W.2d 265, 266 (Iowa App. 1991) (trial court's decision on cross motions for summary judgment is reviewed to determine whether the law was correctly applied).

## II. Duty to Defend.

■ First, we must determine whether this case was appropriate for summary judg-

ment. As stated above, summary judgment is proper only when the entire record before the court shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *McKiness Excavating v. Morton Bldgs.*, 507 N.W.2d 405, 408 (Iowa 1993). No fact question exists if the only dispute concerns the legal consequences flowing from undisputed facts. *Id.* The parties in this case stipulated there were no material facts in dispute and the only issue involved the construction and interpretation of the insurance agreements. Construction and interpretation of an insurance policy are questions of law for the court. *Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 775 (Iowa 1993). Because the issue presented involves a pure question of law, it is suitable for summary disposition. *McKiness Excavating*, 507 N.W.2d at 408.

Next, we must determine whether defendants had a duty to defend the Bank against the Goembels' lawsuit. An insurer has a duty to defend whenever there is potential or possible liability to indemnify the insured based on the facts appearing at the outset of the case. *First Newton Nat. Bank v. General Cas. Co.*, 426 N.W.2d 618, 623 (Iowa 1988). We look first and primarily to the petition for the facts at the outset of the case. *Id.* When necessary, we expand our scope of inquiry to any other admissible and relevant facts in the record. *Id.* Such expansion is especially necessary under "notice pleading" petitions which often give few facts upon which to assess an insurer's duty to defend. *McAndrews v. Farm Bureau Mut. Ins. Co.*, 349 N.W.2d 117, 119 (Iowa 1984). An insurer cannot await the outcome of the trial to furnish the defense if potential liability appears at an earlier stage. *Id.* "On the other hand, an insurer is not required to provide a defense when no facts presently available to it indicate coverage of the claim merely because such facts might later be added by amendment or introduced as evidence at the trial." *Id.*

In the present case, we now look to the pleadings and all other "admissible and relevant facts," *McAndrews*, 349 N.W.2d at 119 (quoting *Central Bearings Co. v. Wolverine Ins. Co.*, 179 N.W.2d 443, 445 (Iowa 1970), to determine if Fidelity and Glen Falls had a duty to defend. Coverage is triggered under both insurance policies if the Bank is obligated to pay damages because of bodily injury or property damage caused by an "*occurrence.*" An occurrence under both policies is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Both policies also have an exclusion for intentional acts by the insured. Given the terms of the policies, if the Goembels' action did not constitute an "occurrence" or if it only alleged intentional acts by the Bank, the claim was not covered under either insurance policy and the insurance companies did not have a duty to defend.

The petition filed by the Goembels alleged breach of written contract and breach of implied contract of good faith and fair dealing. The petition also claimed the Bank's actions and conduct were done intentionally. In their petition, the Goembels did not argue the actions of the Bank were accidental; rather, they claimed the Bank's conduct was of an intentional nature. Because none of the allegations involved accidents, they cannot be considered "occurrences" as defined by the two policies. Furthermore, because the Goembels only alleged intentional actions, the allegations contained in the petition fall within the exclusions of both policies. As such, none of the allegations contained the Goembels' petition fall within the coverage limits of either insurance policy and, therefore, the companies did not have a duty to defend.

The Bank claims the insurers incorrectly limited their inquiry of the allegations to the petition and, had the insurers looked beyond the petition, other facts would have revealed there was a duty to defend. More specifically, the Bank argues a negligence action could have been asserted because, in a deposition, a witness referred to a bank loan officer's "lack of judgment" and stated the Goembels believed the officer "didn't known what he was doing." The Bank further argues, because of notice pleading and Iowa's liberal policy of allowing amendments to petitions, a negligence action could have been brought thus requiring coverage.

As stated above, an insurance company cannot predicate denial of coverage merely on the allegations in the petition. *Id.* The scope of inquiry sometimes must be expanded beyond the petition especially under a "notice pleading" petition. *Id.* As such, an insurer must look to the pleadings and "all other admissible and relevant facts" to determine whether there is a duty to defend. *Id.* However, an insurer is not required to give a defense when there are no facts presently available to it which indicate coverage, merely because such facts might later be added by amendment or introduced at trial. *Id.* In this case, nothing in the pleadings or other facts at the outset of the case indicated the Goembels were going to pursue a negligence action, and, in fact, the Goembels never pursued a negligence claim. The claim was strictly based on breach of contract. As such, a duty to defend never arose.

The Bank also places emphasis on the court's need to examine the substance of the petition rather than its form. The Bank claims the substance of the Goembels lawsuit alleges negligent actions. Our supreme court has held courts must "examine the substance as opposed to the form" of the claim in determining whether the claim falls within an insurance policy's coverage. *Essex*, 506 N.W.2d at 775. In the case at bar, the language of the petition only alleges the Bank's actions were intentional; there is no allegation of negligence. Furthermore, no other facts indicated a negligence action would be pursued. As such, both the form and substance of the claim reveal the insurance companies did not have a duty to defend.

We conclude none of the Goembels' allegations were "occurrences," and the Goembels merely alleged intentional acts which come under the policies exclusions. Therefore, neither insurance company had a duty to defend the Bank in the lawsuit with the Goembels.

### III. Duty to Investigate.

The Bank also argues the insurer improperly shifted the duty to investigate the claim from itself to the insured. We find this claim without merit. After the bank notified the insurance company of the claim against it, the insurers responded by saying the petition did not allege facts triggering a duty to defend and, if other information came to light affecting coverage, they would reconsider the matter. As stated in part II, we determine the two insurance companies adequately reviewed the facts known at the outset of the case and correctly concluded the Goembels' claims were not covered. Additionally, it was appropriate for the insurance companies to request the Bank notify them if the Goembels amended their petition or if additional facts affecting coverage came to light. The insurance policies placed a duty upon the insured to notify the insurers of an "occurrence" or an offense which might result in a claim. As such, after the insurance companies investigated the claim and found there was no occurrence, it was then the insured's responsibility to notify the insurers if circumstances changed constituting an "occurrence." The insurance companies cannot be expected to check on the status of denied claims to determine whether changes have occurred which warrant coverage.

### IV. Reference to the Lawsuit's Outcome.

Lastly, the Bank argues the district court erred in referring to the outcome of the Goembels' lawsuit in its order. We determine this claim has no merit. The district court's decision was not based upon the outcome of the Goembels' lawsuit. The district court entered a detailed eighteen-page order explaining the reasons for the decision. We find those reasons accurate and convincing. No error occurred.

**AFFIRMED.**