# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-1437

_____

| | | |
|---|---|---|
| Norwalk Ready Mixed Concrete, Inc., an Iowa Corporation, | * * * | |
| Appellant, | * * | |
| v. | * * | Appeal from the United States District Court for the |
| Travelers Insurance Companies, a/k/a Travelers Indemnity Company; Charter Oak Fire Insurance Company, | * * * * | Southern District of Iowa. |
| Appellees. | * * * | |

_____

Submitted: December 13, 2000
Filed: April 19, 2001

_____

Before WOLLMAN, Chief Judge, RICHARD S. ARNOLD, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Norwalk Ready Mixed Concrete (Norwalk) filed suit against Travelers Insurance Companies and Charter Oak Fire Insurance Company (collectively Travelers). Norwalk alleged that Travelers breached a comprehensive general liability policy and a separate catastrophe umbrella policy by failing to defend and indemnify it in previous

litigation. The district court granted summary judgment in favor of Travelers, and Norwalk appeals. We affirm in part and reverse in part.

## I.

Norwalk sought the providing of a defense and indemnification from Travelers during litigation arising out of concrete it supplied in 1984 for the construction of a trucking terminal parking lot. Annett Holdings contracted with B-D Construction to build a trucking terminal, and B-D Construction in turn subcontracted some of the construction of the terminal's parking lot to Norwalk and another subcontractor. In 1991, Annett Holdings filed suit in Iowa state court, alleging a breach of contract claim against B-D Construction and breach of warranty and negligence claims against both B-D Construction and Norwalk. Annett Holdings alleged in its state court petition that B-D Construction contracted with Norwalk to provide and pour the concrete for the parking lot and, further, that it discovered a problem with the concrete around 1987 when it began to crack and deteriorate abnormally. Annett Holdings sought damages for the costs it expended to repair and replace the concrete.

Norwalk filed cross-claims against B-D Construction and the subcontractor in January 1994, alleging their faulty specifications for the concrete work and subpar workmanship caused the concrete problems. Shortly thereafter, Norwalk filed an insurance claim with Travelers under its general liability and umbrella policies, seeking a defense and indemnification in the state court litigation. In addition to providing the petition and cross-petition to Travelers, Norwalk supplied the company with a report by the executive vice president of the Iowa Concrete Paving Association, identifying that the concrete problems in the parking lot were caused by: 1) insufficient subgrade support; 2) thin design thickness (5.5 inches) for high-volume, heavy-truck traffic; 3) joint spacing at too great an interval; and 4) a high water-to-cement ratio. Norwalk's cross-petition alleged that B-D Construction and the subcontractor were responsible

for the parking lot's design and for the addition of water to the mix at the time Norwalk supplied the concrete.[1]

Travelers denied the claim on the basis that there was no coverage under either policy. In June 1995, Norwalk settled Annett Holdings' claims for $67,500 and was dismissed with prejudice from the state court proceedings after incurring nearly $130,000 in attorneys' fees and other defense costs.

Norwalk filed this breach of contract action against Travelers in July 1999, seeking reimbursement of the settlement costs and defense costs it incurred in the state court litigation. Travelers filed a motion for summary judgment, arguing in support that the damage to the parking lot either was not covered or, alternatively, was excluded by the policies sued on. Under the general liability policy, Travelers is obligated to defend and indemnify Norwalk for "property damage . . . caused by an occurrence." (J.A. at 178.) An "occurrence" is further defined in the general liability policy as an accident. (J.A. at 181.) Relying on Pursell Constr., Inc. v. Hawkeye-Sec. Ins. Co., 596 N.W.2d 67 (Iowa 1999), the district court ruled that the damage to the concrete did not result from an "accident" under Iowa law and therefore concluded no coverage existed. Alternatively, assuming an accident caused the damage, the district court ruled that the concrete damage was excluded under the general liability policy's "business risk" exclusion. It similarly concluded coverage was excluded under the umbrella policy as

---

[1]Annett Holdings' expert opined that the primary cause of the concrete's deterioration was an excessive amount of water added to the concrete mix and that a secondary cause was the concrete's thickness.

well because the umbrella policy contained an almost identical business risk exclusion.[2]

## II.

We review the district court's grant of summary judgment de novo. See Noran Neurological Clinic, P.A. v. Travelers Indem. Co., 229 F.3d 707, 709 (8th Cir. 2000). Summary judgment is proper if no genuine issue of material fact remains, and the moving party is entitled to judgment as a matter of law. Id. at 708-09. A district court's interpretations of provisions in an insurance contract are also reviewed de novo as questions of law. Id. at 709. The parties agree that Iowa law governs this diversity action.

An insurer's duty to defend under an insurance contract is broader than its duty to indemnify an insured. Stine Seed Farm, Inc. v. Farm Bureau Mut. Ins. Co., 591 N.W.2d 17, 18 (Iowa 1999). The duty to defend arises "whenever there is potential or possible liability to indemnify the insured based on the facts appearing at the outset of the case." First Nat'l Bank v. Fid. & Deposit Co., 545 N.W.2d 332, 335 (Iowa Ct. App. 1996). We must look first and primarily to the petition to determine whether the alleged facts bring the claim within the policy's coverage, but the inquiry must be expanded to any "other admissible and relevant facts in the record" that surfaced during the litigation. Id. at 335.

Whether the relevant facts trigger the duty to defend depends, of course, on the actual language of the insurance contract and its interpretation. Under Iowa law,

---

[2]As with the general liability policy, Travelers argued that the damage to the parking lot concrete was not a covered occurrence under the umbrella policy. The district court did not reach the "occurrence" issue and instead relied solely on the business risk exclusion in granting summary judgment on Norwalk's breach of the umbrella policy claim.

[t]he cardinal principle in the construction and interpretation of insurance policies is that the intent of the parties at the time the policy was sold must control. Except in cases of ambiguity, the intent of the parties is determined by the language of the policy. An ambiguity exists if, after the application of pertinent rules of interpretation to the policy, a genuine uncertainty results as to which one of two or more meanings is the proper one. Because of the adhesive nature of insurance policies, their provisions are construed in the light most favorable to the insured. Exclusions from coverage are construed strictly against the insurer.

Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Federated Mut. Ins. Co., 596 N.W.2d 546, 550 (Iowa 1999) (quotations omitted). In determining the meaning to be given the policies, we recognize that we must give their language "its plain and ordinary meaning and [we] do not indulge in a strained or unnatural interpretation merely to find ambiguity." Cont'l Ins. Co. v. Bones, 596 N.W.2d 552, 556 (Iowa 1999).

III.

Norwalk contends the district court erred in concluding that coverage did not exist under the general liability and umbrella policies. It argues that the district court incorrectly relied on Pursell to conclude that the damage to the concrete did not result from an "accident," as that term is used in the general liability policy. It further argues that the business risk exclusions are inapplicable because the damage to the parking lot concrete did not "arise out of" its product. Instead, it contends, there were factual allegations made during the state court litigation that the concrete problems were caused by B-D Construction and the subcontractor's faulty parking lot design and their excessive addition of water to the concrete Norwalk supplied.

A. General Liability Policy

Travelers' general liability policy covers property damage caused by an "occurrence," which is defined in the policy as "an <u>accident</u>, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the Insured." (J.A. at 181 (emphasis added).) The term "accident" is left undefined in the policy. In <u>Pursell</u>, a case somewhat analogous to this one, the Supreme Court of Iowa concluded that when "accident" is used in the definition of an "occurrence," but left undefined in the policy, the ordinary meaning to be given the term is "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. . . . [The term] clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune." 596 N.W.2d at 70 (quoting <u>Central Bearings Co. v. Wolverine Ins. Co.</u>, 179 N.W.2d 443, 448 (Iowa 1970)).[3] The court went on to hold that a claim characterized essentially as one for a contractor's defective workmanship in the construction of a foundation, "resulting in damages only to the work product itself," was not caused by an "occurrence" under Iowa law. <u>Id.</u> at 71.

Norwalk concedes that the parking lot damage was caused by defective workmanship, Appellant's Br. at 36, but it argues that <u>Pursell</u> does not control whether coverage exists in this case for two reasons. First, the company argues that it, the insured, was not responsible for the concrete's flaws. In <u>Pursell</u>, the insured alone constructed the foundation. 596 N.W.2d at 71. We find no merit to the asserted factual distinction. Without qualm, the <u>Pursell</u> court explained that negligent conduct itself, although it may ultimately result in injury or damage to a victim, does not fall within the ordinary meaning of an accident. <u>Id.</u> at 70. (That is not to say that

_____

[3]The policy in <u>Pursell</u> covered damage caused by an "occurrence," which was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." 596 N.W.2d at 70 (internal quotations and emphasis omitted).

negligence cannot be the cause of an accident.) Negligence by some one of some kind was admittedly the cause of Annett Holdings' damage, and to suggest that negligent conduct may be recharacterized if the insured was not the negligent party strains beyond its breaking point the ordinary meaning of "accident." We therefore hold that defective workmanship, regardless of who is responsible for the defect, cannot be characterized as an accident under Iowa law.

Our conclusion that Pursell controls forecloses Norwalk's second argument–that potential coverage existed because it did not expect nor intend the damage suffered by Annett Holdings. It argues that unlike the policy language in Pursell, the general liability policy here required that the accident be "neither expected nor intended from the standpoint of the Insured." (J.A. at 181.) When such language is included, according to Norwalk, coverage cannot be denied under Iowa law for want of an occurrence where the damage was not expected nor intended by an insured. We find the argument strained at best. There are two components that must be shown to establish an "occurrence" under the policy: "(1) an accident; and (2) personal injury or property damage neither expected nor intended from the standpoint of the insured." West Bend Mut. Ins. Co. v. Iowa Iron Works, Inc., 503 N.W.2d 596, 600 (Iowa 1993) (addressing an identical insurance provision). Because Norwalk cannot show that the parking lot damage was caused by an "accident," the additional language upon which it relies is irrelevant.

We conclude for these reasons that the district court correctly granted summary judgment on Norwalk's claim that Travelers breached the general liability policy. Norwalk fails to present any facts from which a reasonable trier of fact could conclude that the concrete damage was caused by an occurrence within the meaning of the general liability policy, which would have triggered Travelers' potential or actual liability under the policy. We find it unnecessary, as a result, to further address Norwalk's argument that the general liability policy's business risk exclusion is not implicated nor its alternative argument that even if the exclusion did apply it frustrated

7

its reasonable expectation of coverage in such a manner to render the exclusion invalid under Iowa law.

### B. Umbrella Policy

Resolving whether Travelers had a duty to provide a defense or indemnify Norwalk under the terms of the umbrella policy, however, leads us head on into the umbrella policy's business risk exclusion. The district court relied solely on the exclusion, which bars coverage for property damage "to the Named Insured's products arising out of such products or any part thereof," J.A. at 183, to conclude that Travelers' was entitled to judgment as a matter of law on the umbrella policy coverage question. The district court reasoned that coverage was excluded under the provision because the only damage sought by Annett Holdings was for damage to the concrete itself, which was Norwalk's own product.

In support of its argument that the exclusion is inapplicable, Norwalk relies heavily on Fireguard Sprinkler Sys., Inc., v. Scottsdale Ins. Co., 864 F.2d 648, 654 (9th Cir. 1988). In Fireguard, the court held that a similar exclusion did not bar coverage for damage to an insured's product, a water reservoir tank, where the damage was allegedly caused by a subcontractor's negligent installation of the tank. Id. The court reasoned that an insurer must show both 1) damage to the insured's product and 2) that the damage arose out of the product before the exclusion is triggered. Id. We conclude that the Supreme Court of Iowa would interpret the business risk exclusion in the umbrella policy similarly, considering the court's previous decisions explaining the meaning to be given the phrase "arising out of" when it is used in an insurance policy's exclusionary clause. See, e.g., Kalell v. Mut. Fire & Auto. Ins. Co., 471 N.W.2d 865, 868 (Iowa 1991) (holding that a homeowners policy excluding coverage for any occurrence arising out of the use of a motor vehicle must be construed strictly against the insurer to mean that coverage was barred only if the vehicle was the sole proximate cause of the damage or injury); see also Tacker v. Am. Family Mut. Ins. Co., 530

N.W.2d 674, 677 (Iowa 1995) (discussing the narrow construction to be given the phrase "arising out of" when it is used in an exclusionary clause). Travelers must therefore show that the damage to the parking lot concrete was proximately caused by Norwalk's concrete.

We reject Travelers' assertion that the exclusion applies whenever damage occurs to the insured's product. If it intended such a result, it could easily have written the exclusion to bar damage "to the Named Insured's products" without including the remaining language that the damage "arise out of" the insured's product. Given that the language is included, though, and considering the meaning it must therefore be afforded under Iowa law, we conclude that Travelers has not shown as a matter of law that the damage to the concrete "arose out of" Norwalk's concrete, thereby entitling it to summary judgment on the issue of whether it owed a duty to defend or indemnify Norwalk. See West Bend, 503 N.W.2d at 598 (stating that the insurer bears the burden to show that coverage is barred by an exclusion).

IV.

For these reasons, we affirm the district court's judgment granting summary judgment on the breach of the general liability policy claim but reverse and remand the breach of the umbrella policy claim for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9