Alfred D. KLOOSTER, Charlotte R. Klooster and Raymond J. Klooster, All Individually and f/d/b/a Triple-K Partnership, Appellees,

v.

NORTH IOWA STATE BANK; the Aetna Casualty and Surety Company; David J. Michel, Individually and as Sheriff of Hancock County, Iowa; and Hancock County, Iowa, Appellants.

No. 84–985.

Supreme Court of Iowa.

April 15, 1987.

As Amended on Denial of Rehearing May 8, 1987.

David M. Nelsen and John S. Mackey of Nelsen & Folkers, Mason City, and M. Gene Blackburn of Law Offices of M. Gene Blackburn, P.C., Fort Dodge, for appellants.

David A. Opheim and Greg Knoploh of Kersten, Opheim & Carlson, Fort Dodge, and David A. Sergeant of Johnson, Erb, Latham, Gibb & Carlson, P.C., Fort Dodge, for appellees.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

CARTER, Justice.

Defendants, North Iowa State Bank (the bank) and its surety, Aetna Casualty and

Surety Company, appeal from a judgment for actual and punitive damages entered against them in favor of plaintiffs, Alfred Klooster, Charlotte Klooster, and Raymond Klooster (the Kloosters), on various legal theories as a result of the bank's attachment (for which bond was furnished) and sale of hogs securing debts owed the bank by the Kloosters. Claims of the Kloosters against Hancock County and the sheriff of Hancock County and the sheriff's cross-petition against defendants have been disposed of by the parties and are not involved in this appeal.

In 1981, the bank, in an action against the Kloosters on two promissory notes, sought and obtained an ex parte order for the attachment of the Kloosters' swine herd, which was collateral for the notes. The action sought recovery of $128,364. The order provided for attachment of hogs with a value of $100,000. All of the Kloosters' 1736 hogs were attached by the sheriff. A surety bond of $250,000 was provided by Aetna Casualty and Surety.

The order authorizing the attachment provided that because the hogs were perishable they should be sold immediately and the proceeds should be applied against the Kloosters' debts to the bank. An affidavit of the bank president, attached to the ex parte application, stated that there were reasonable grounds to believe that the Kloosters had sold or had attempted to sell some of their hogs for the purpose of putting the collateral beyond the reach of creditors and that, unless prevented by the court, the hogs might be sold, removed, and concealed.

The notice of levy of attachment contemporaneously served on the Kloosters did not mention any sale. Prior to taking possession of the hogs, the sheriff contacted three potential bidders, requesting private bids, and sold the hogs to one of them for $63,500. This sale occurred without the Kloosters' knowledge.

The Kloosters' amended petition sought actual and punitive damages from the bank on theories of wrongful attachment, conversion, disposition of collateral in other than a commercially reasonable manner, abuse of process, tortious interference with a business relationship, and violation of civil rights contrary to 42 U.S.C. section 1983 (1982). Following the first segment of a bifurcated trial involving only liability, the jury returned findings in favor of the Kloosters and against the bank under each of the foregoing theories. The same jury then heard additional evidence concerning damages and returned verdicts against the bank in the following amounts:

| | |
|---|---|
| Wrongful attachment | $565,000 actual damages; 50,000 punitive damages |
| Abuse of Process | 50,000 actual damages; 25,000 punitive damages |
| Conversion | 145,000 actual damages; 50,000 punitive damages |
| Sale in Other Than Reasonably Commercial Manner | 145,000 actual damages; 100,000 punitive damages |
| Tortious Interference With Business Operations | 100,000 actual damages; 30,000 punitive damages |
| Civil Rights Violation Under 42 U.S.C. § 1983 | 50,000 pecuniary damages; 45,000 damages for emotional distress; 25,000 punitive damages |

The court, apparently believing that certain of the separate verdicts were duplicative of each other, included in the judgment only the $565,000 actual damage recovery for wrongful attachment, the $45,000 recovery for emotional distress under section 1983, and the highest of the several punitive damage verdicts ($100,000). In addition, it awarded the Kloosters $116,820 for attorney fees under section 1983.

The bank and its surety have appealed from this judgment, asserting that they were entitled to a directed verdict on each of the several claims and, in the alternative, asserting that errors were committed during the trial with respect to admission of evidence and instructions on the applicable law. We discuss those portions of the several contentions urged which we deem dispositive of the issues on appeal. Additional facts bearing upon the disposition of the case will be stated in conjunction with our discussion of the legal issues.

## I. *Real Parties in Interest.*

██ We first consider the bank's contention that certain of the plaintiffs have failed to demonstrate that they are the real parties in interest with respect to various portions of the damage claims which were allowed. We find no merit in this contention. The record suggests that one or more of the plaintiffs, or a partnership to whose interest one or more of the plaintiffs succeed, would be the real parties in interest with respect to the several claims presented. Under such circumstances, it is permissible for the parties to jointly present said claims without identifying the interest which each individual plaintiff has in the whole.

██ The extent of each individual plaintiff's interest in the recovery is a matter to be settled between the plaintiffs *inter se.* As long as the defendants are protected against double recovery, they are not prejudiced by that method of submitting the case. *See Kimmel v. Iowa Realty Co.*, 339 N.W.2d 374, 379–80 (Iowa 1983); *In re Marriage of Stutsman*, 311 N.W.2d 73, 75 (Iowa 1981); Iowa R.Civ.P. 2. No danger of double recovery against the defendants is presented under the present facts with respect to the claims of the plaintiffs or of the partnership to whose interest they succeed.

## II. *Alleged Error in Denial of Defendants' Motion for Summary Judgment.*

The bank also contends that the district court erred in denying its motion for summary judgment with respect to each of the various theories for which recovery was ultimately allowed. The same legal arguments presented in this assignment of error are also included in a separate assignment stating that the bank and its surety were entitled to a directed verdict as to these claims at the conclusion of all of the evidence.

██ On an appeal from a final judgment following trial, determination of the existence or nonexistence of genuine issues of material fact made upon affidavits, depositions, and pleadings for the purpose of adjudicating a motion under Iowa Rule of Civil Procedure 238, should, we believe, be superseded by the court's rulings on motions for directed verdict at the close of all the evidence. Consequently, determinations made in advance of trial concerning a genuine issue of material fact will not constitute grounds for reversal where a full trial is subsequently held and sufficient evidence is produced to sustain the claim. We decline to consider the assignments of error relating to the summary judgment stage of the litigation and instead consider only those claims in connection with the bank's motion for directed verdict made at the conclusion of all of the evidence.

## III. *Defendants' Motion for Directed Verdict.*

The bank asserts that its motion for directed verdict should have been granted with respect to each of the several theories of liability presented. We agree as to that portion of the Kloosters' claims based upon wrongful attachment, tortious interference with a business relationship, and the alleged civil rights violation under 42 U.S.C. section 1983.

*A. The wrongful attachment claim.* The Kloosters presented a traditional wrongful attachment claim based upon their contention that the bank did not have reasonable grounds to believe the matters asserted in the affidavit offered for purposes of obtaining the writ under Iowa Code section 639.3 (1983). The grounds which had been asserted by the bank in seeking the writ were that it had reasonable cause to believe that the Kloosters had sold or were attempting to sell their hogs in order to put them beyond the reach of creditors and that, unless prevented by the court, they would continue to do so.

In December 1980, the bank advised the Kloosters in writing that it would not provide further financing for their farming operations and requested that existing notes be paid as they came due. All existing notes were secured by liens on the Kloosters' swine herd. Evidence produced at the trial indicated substantial sales by the Kloosters of hogs subject to the bank's

security interest. Defendant's Exhibit FFF is a compilation of evidence of various hog sales made by the Kloosters during the three-month period preceding the writ of attachment. It shows the following:

| | |
|---|---|
| Rath Packing Co. | $34,474.81 |
| Schmidt Lvstk. | 8,627.02 |
| Cow Palace | 9,798.01 |
| Algona Lvstk. | 15,159.00 |
| Sorensen Lvstk. | 1,504.12 |
| Total Sales | $69,562.96 |

The bank shared in the proceeds of some of these sales by unilaterally exercising a set off against the account in which the funds were deposited.

It is not entirely clear whether the bank was aware of the full extent of the hog sales which had taken place at the time it sought the writ of attachment. It does appear without dispute, however, that prior to obtaining the attachment the bank became aware of certain pending sales of the Kloosters' hogs and requested that the buyer make the checks payable jointly to the Kloosters and the bank. The bank's desires in that regard were rebuffed when the Kloosters prevailed upon the buyer not to include the bank as a joint payee on the checks.

■ Viewing the evidence most favorably toward the Kloosters, there is slight, if any, support for their contention that the bank did not have grounds to believe that they were putting assets beyond the reach of their creditors. We need not, however, turn our decision entirely on the reasonableness of the bank's belief in this regard. It appears without dispute that the bank held a lien on all of the Kloosters' swine herd. It also appears that the Kloosters, at the time of the attachment, were in default on one or more of their obligations to the bank secured by that lien. The general attachment statutes set forth in chapter 639 of the Code contemplate an auxiliary remedy for an unsecured creditor. If such a creditor has reasonable grounds to believe that a debtor is placing assets beyond the creditor's reach, enough of the debtor's

assets to satisfy the creditor's claim may be placed in *custodia legis* pending trial of the action on the unsecured account. Although certain sections of chapter 639 make some of the benefits of an attachment action available to secured creditors, that is not the primary purpose of the legislation.

In the present case, the bank, in addition to asserting that it had reasonable cause to believe that the Kloosters were acting in a manner which would give an unsecured creditor grounds to obtain a writ of attachment, has also contended throughout that, as a secured creditor, it was entitled to obtain possession of the Kloosters' collateral under Iowa Code section 554.9503 merely by demonstrating that the debtors were in default on the obligation. That the Kloosters were in default in the sum of $128,364 appears without dispute.

■ We agree that under this set of circumstances the bank was entitled to possession of the hogs either by self-help, where permissible under section 554.9503, or by appropriate legal process as authorized in section 554.9501(1). Because the Kloosters' wrongful attachment claim is based upon actions of the bank in wrongfully dispossessing them of the hogs, it is lacking in legal merit. The bank was legally entitled to take possession of the hogs either personally or by employing legal process to place the collateral in *custodia legis*. The bank's motion for directed verdict as to that claim should have been granted.[1]

B. *The section 1983 claim.* The bank also asserts that it was entitled to a directed verdict with respect to Kloosters' claims under 42 U.S.C. section 1983. Although recognizing that a use of legal process which results in a taking without due process of law may be action "under color of state law" so as to support a section 1983 claim, *see Lynch v. Household Fin. Corp.,* 405 U.S. 538, 553, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424, 434–35 (1972), the bank contends that on the facts of the present case such circumstances would only permit a

---

1. The Kloosters also claim that the sale of the hogs after the seizure was not in accordance with law. That claim was fully presented under

theories of recovery other than wrongful attachment and is considered later in this opinion.

claim against a governmental officer. It urges that the Court in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), limited private citizen liability in cases involving legal process to situations where the state statutory procedure is unconstitutional. The bank claims that section 1983 recoveries will not lie under *Lugar* in instances where a constitutional statute has been misapplied or abused.

The Court in *Lugar* considered a section 1983 action involving two separate counts growing out of the use of state judicial process. Under the first count, the petitioners urged that state officials, acting at the request of a private party, had invoked legal process which denied the petitioners due process of law. As to that claim, the Court held that the private party defendants were *acting under color of state law* for purposes of section 1983.

The second count in *Lugar* alleged that the state officials, in seeking to execute a judicial process, went beyond the authority conferred by the state statute. As to that count, the Court indicated that the private persons inducing the public officials to act were not acting under color of state law. In describing this situation, the Court observed:

> Count two alleged that the deprivation of property resulted from respondents' "... unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State.... That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

*Lugar*, 457 U.S. at 941, 102 S.Ct. at 2755, 73 L.Ed.2d at 497. *See also Del's Big Saver Foods v. Carpenter Cook, Inc.*, 795 F.2d 1344, 1346 (7th Cir.1986).

As a result of our determination that the facts do not support a finding of wrongful attachment, all that remains of the Kloosters' section 1983 claim is a contention that, in selling the hogs, the sheriff, acting at the bank's request, and the Iowa District Court, acting to authorize the sheriff's actions, went beyond that which is permitted by applicable statutory procedures.

As to that contention, it appears the procedures required by section 639.48 for determining whether the hogs were perishable were not utilized. In addition, the order directed payment of the sale proceeds to the bank rather than directing that they be held by the clerk to abide the outcome of the action on the notes. There was substantial evidence presented that this resulted in the hogs being sold for far less than could have been received if the sale had been conducted in a reasonably commercial manner. For purposes of *Lugar*, however, we believe the Kloosters' claims against the bank lie outside the ambit of section 1983. Under the *Lugar* rationale, any action of the bank on the facts alleged is not under color of state law.

Although the Kloosters also claim that the statutory procedures in question are facially unconstitutional and serve to deny due process, the district court rejected that claim. We conclude that that determination was correct in light of our decision in *Stoller Fisheries v. American Title Insurance*, 258 N.W.2d 336 (Iowa 1977). The bank was entitled to a directed verdict on the section 1983 claim. This precludes recovery by the Kloosters for emotional distress and for the attorney fees ordered to be paid by the district court as well as for any pecuniary loss sought to be recovered thereunder.[2]

C. *Claim for tortious interference with a business relationship*. We next consider the bank's contention that it was

---

**2.** The Kloosters claim, in the alternative, that the attorney fee award may be upheld under Iowa Code § 639.14. We believe that such is not the case in view of our determination that the bank was entitled to a directed verdict on the wrongful attachment claim.

entitled to a directed verdict on the Kloosters' claim for tortious interference with a business relationship. The bank asserts the alleged conduct giving rise to this claim involves transactions between itself and the Kloosters *inter se.* It suggests this is a setting which cannot give rise to a tortious interference claim. In making this contention, the bank points out that the Kloosters rely on the identical conduct as the basis for their wrongful attachment, abuse of process, and wrongful disposition of the collateral claims.

The Kloosters urge there is no legal basis for the bank's assertion that conduct amounting to wrongful attachment, abuse of process, or unlawful disposition of collateral will not support a tortious interference claim. As authority for that contention, they rely on *Team Central, Inc. v. Teamco, Inc.,* 271 N.W.2d 914 (Iowa 1978). In that case, the jury and the district court allowed a tortious interference recovery for the same conduct found to constitute a wrongful attachment, trespass and unlawful conversion of property. The decision on appeal, however, did not consider whether that determination was correct. The appeal was decided on the basis that any separate recovery on the tortious interference claim was included in the verdicts issued under the other theories and that the plaintiff in that action was only entitled to a single recovery.

In *Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 403 (Iowa 1982), we left open the question of whether it is possible to tortiously interfere with a contract to which one is a party. The provisions of Restatement (Second) of Torts section 766 (1979) relate to interference with existing contracts between plaintiff and a third person. The language of section 766A of the Restatement is similarly limited. One writer suggests that recovery also be permitted under section 766A in instances where the defendant is a discontented promisee seeking to avoid his own contractual obligations to the plaintiff by preventing the plaintiff from performing. *See* Perlman, *Interference with Contract and Other Economic Expectancies: A Clash of Tort and Contract Doctrine,* 49 U.Chi.L.Rev. 61, 99 (1982).

The claims in the present case relate to both present and prospective interference. Acts by the bank in debiting the Kloosters' checking account for sums owed the bank on promissory notes and the sale of the hogs contrary to statutory procedure related to existing contracts between the bank and the Kloosters. No third parties were involved. The facts do not fit within either section 766 or section 766A of the Restatement. Moreover, if the bank acted wrongfully in the manner alleged, the Kloosters had an adequate remedy for breach of contract or abuse of process. We decline to recognize a tortious interference claim based on these acts. The district court erred in submitting any claim for interference with existing business relationships.

The Kloosters also assert in support of their intentional interference claim that the bank gave inaccurate credit information to another potential lender thus interfering with prospective business relationships. Assuming that the evidence produced a jury issue as to whether or not statements made by the bank to the prospective lender were inaccurate, we fail to find that a jury question was engendered with respect to the required causation for the damages claimed. Any failure of other lenders to provide them with funds is not factually tied to any economic loss on their part. Consequently, the bank was also entitled to a directed verdict on the portion of the tortious interference claim involving prospective relationships.[3]

---

**3.** The method in which the issues were submitted to the jury allowed the plaintiff to finesse somewhat the issue of proximate cause. This occurred because the liability issues were submitted on the basis that specific conduct, enumerated in the instructions, must have given rise to *some* damage. In the damage segment of the bifurcated trial, however, even though the jury was told that damages must have been proximately caused by actionable conduct of the defendant, the specific acts which would permit recovery of damages under the several theories of liability were not set forth in the instructions.

## IV. *Permitting Recovery for Sale in Other than a Reasonably Commercial Manner Under Section 554.9504.*

The bank argues that the district court erred in permitting the jury to consider the Kloosters' claim that their hogs were sold in other than a reasonably commercial manner. Such a claim is not available, the bank contends, when sale is pursuant to established judicial process.

■ If the statutory procedure set forth in Iowa Code chapter 639 had been followed in selling the Kloosters' hogs, we believe the bank's contention would be correct. *See Farmers State Bank v. Ballew,* 626 P.2d 337, 339 (Okla.App.1981). The parties contractual rights to sale of collateral in a reasonably commercial manner as implemented by the Uniform Commercial Code must yield to specific statutory procedures mandated for sale under judicial process. The bank has a problem, however, in benefiting from that principle in the present case. The alternative statutory procedures were not followed. Accordingly, the Uniform Commercial Code requirements were never displaced by other *valid* legal procedures.

Under the provisions of section 639.48, section 639.49, and section 639.50 three qualified persons must examine the property and determine whether it is in danger of serious and immediate waste or decay or will necessarily be attended with unreasonable expense if kept. This was not done prior to the summary sale of the Kloosters' hogs. The evidence suggests that conditions authorizing an immediate sale could not have been established had such a jury been summoned. In addition, there was considerable evidence that the amount received from this hog sale was substantially less than that which would have been received had the sale been conducted with proper notice.[4]

■ The bank urges that it is protected against liability for these occurrences by the provisions of sections 639.36 and 554.-9507(2). We disagree. If the provisions of section 639.36 afford any protection against the Kloosters' claims in the present case, this would only aid the sheriff. Claims against the sheriff have been settled by the parties and are not involved on this appeal. It provides no defense to the bank on the circumstances presented to assert that the challenged procedure was approved by court order. To the extent the Kloosters have been injured by the sale of their property contrary to law, they have a remedy against persons such as the bank who procured, participated in or ratified the illegal acts. *Bradshaw v. Frazier,* 113 Iowa 579, 583, 85 N.W. 752, 753 (1901).

■ Section 554.9507(2) also affords the bank no defense on the present facts. The Kloosters' claim is not based on a violation of the Uniform Commercial Code. It is based on a violation of sections 639.48–.50. The provisions of the commercial code are only resorted to for purposed of determining an appropriate measure of damages.

■ Because the requirements for sale under the Uniform Commercial Code were not displaced by other lawful procedures for selling the hogs, we believe the Code may be resorted to in determining the measure of the debtor's right to recover for any resulting loss. The instructions of the court concerning sale of the property in other than a reasonably commercial manner adequately conveyed to the jury that its verdict on this count should reflect the difference between the amount which was received from the unadvertised private sale and the amount which would have been received had the sale followed the notice requirements of the Uniform Commercial Code. *See Farmers State Bank,* 626 P.2d at 339.

■ Although the verdict on this theory of recovery is large it is within the range of evidence offered in the testimony of competent witnesses. We find no other instructional error or error in the admission of

---

4. The bank suggests that the use of the word "may" in § 639.48 makes the use of the three-person jury discretionary rather than mandatory. Because in the statutory context the word "may" is linked to the enabling conditions for the sale of perishable property, we think that this interpretation is untenable.

evidence which would require setting aside the jury's verdict on the count alleging sale in other than a reasonably commercial manner.

### V. *Sufficiency of Evidence to Support Punitive Damage Award.*

 The bank argues that the evidence is insufficient to support the award of punitive damages returned by the jury. We have recognized that punitive damages are justified where a defendant acts maliciously. *Beeck v. Aquaslide 'n' Dive Corp.*, 350 N.W.2d 149, 167 (Iowa 1984). The malice may be actual (express), such as personal spite, hatred, or ill will, or it may be legal (implied), as where the defendant acts illegally or improperly with willful or reckless disregard for another's rights. *Freeman v. Bonnes Trucking, Inc.*, 337 N.W.2d 871, 879–80 (Iowa 1983); *Holcomb v. Hoffschneider*, 297 N.W.2d 210, 214–15 (Iowa 1980).

 In the present case, the jury could have found that the bank, having learned that the Kloosters were considering filing a federal bankruptcy petition which would stay the bank's action on the notes, acted deliberately to circumvent the statutory protections afforded debtors by the statutes authorizing prejudgment attachment. The evidence suggests the bank was aware of the method employed would not produce the best available price. The order drafted by the bank's attorney provided for immediate payment to the bank of the attachment proceeds rather than holding the money in *custodia legis*. The jury might have found that the bank acted in reckless disregard of the Kloosters' rights in order to avoid the consequences of the impending bankruptcy. We cannot say the district court abused its discretion in upholding the punitive damage award. Because these allegedly malicious acts were intertwined in a single pattern of conduct, we agree with the district court that the Kloosters should recover only the highest of the individual punitive damage awards rather than totaling the separate verdicts.

### VI. *Reconciliation of Verdicts on Remaining Counts.*

Based upon the determinations we have made in the preceding portions of this opinion, the jury verdicts for wrongful attachment, tortious interference and civil rights violations under section 1983 cannot be permitted to stand.

The jury's verdicts on the conversion and abuse of process counts did not necessarily relate to the same elements of damage as the verdict for sale in other than a commercially reasonable manner. The court's instructions on these counts permitted the jury to also award damages for loss to future business operations. We believe, however, that recovery for those additional elements must be deemed to be precluded as a result of the same deficiencies in causal proof which prompted us to deny recovery of damages on the Kloosters' claim for tortious interference with prospective business relationships. The elements of damage for conversion or abuse of process which were sustained by the evidence were included in the jury's verdict for sale in other than a reasonably commercial manner. Accordingly, no retrial on these issues need be ordered.

In reconciling the recoveries on the various counts in accordance with our opinion, the plaintiff is entitled to judgment for actual damages of $145,000 (the amount returned on the verdict for sale in other than a reasonably commercial manner) and to punitive damages in the sum of $100,000. No other recovery shall be included in the judgment, nor should the defendants be required to pay attorney fees.

The Kloosters have filed a notice of cross appeal. They request that the separate punitive damage awards be totaled, a contention rejected in Division V. They also complain about several of the court's instructions and rulings on evidence. We view these arguments as requests for directions to the court in the event that the case is retried. Under our disposition, the case will not be retried.

The judgment from which appeal has been taken is reversed, and the case is

remanded to the district court for entry of a new judgment in accordance with our opinion. Costs on appeal are assessed sixty percent to the Kloosters and forty percent to the bank.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.