James L. CHIPOKAS, Appellant,

v.

The TRAVELERS INDEMNITY COMPANY, Appellee.

No. 60671.

Supreme Court of Iowa.

June 28, 1978.

James R. Snyder of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellant.

Donald G. Ribble of Lynch, Dallas, Smith & Harman, Cedar Rapids, for appellee.

Considered by MOORE, C. J., and LeGRAND, REES, HARRIS and McCORMICK, JJ.

**HARRIS, Justice.**

Is there a duty to defend, under a professional liability insurance policy, against a claim of a fraudulent or dishonest act when the policy excludes liability coverage for such acts? The trial court held there was no duty to defend and we agree.

This action arose because of claims made in earlier suits. Plaintiff is a Cedar Rapids attorney. The Travelers Indemnity Company, defendant [Travelers] issued to plaintiff a professional liability insurance policy which was in effect during the years 1970 and 1971. Under the policy Travelers agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of any act or omission of the insured, or of any other person for whose acts or omissions the insured is legally responsible, and arising out of the performance of professional services for others in the insured's capacity as a lawyer. * * *."

Another provision in the insuring agreements provided:

"With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such act or omission and seeking damages which are payable under the terms of this policy, *even if any of the allegations of the suit are groundless, false or fraudulent. * * *.*" (Emphasis added.)

A provision among the exclusions of the policy provided: "This policy does not apply (a) to any dishonest, fraudulent, criminal or malicious act or omission of any insured, partner or employee."

In his professional capacity plaintiff prepared a will for Chris Poulos. Under that will the property was left to Peter Stavropoulos. Stavropoulos was also named as executor. Plaintiff and his brother witnessed the will. After the death of Poulos, February 28, 1967, the will was admitted to probate. The estate was duly administered upon and, on December 8, 1967, was closed.

On February 13, 1968 a suit was filed to set aside the will on grounds of undue influence and lack of testamentary capacity. This action, characterized by the parties as the "probate action," was brought by a number of Poulos' heirs at law against Stavropoulos as executor and sole beneficiary under the will.

On November 13, 1970, another action was filed by the heirs, this time against plaintiff, plaintiff's wife, Stavropoulos, Stavropoulos' wife, and plaintiff's brother who witnessed the will. The second action, which the parties have characterized as the "direct action," alleged plaintiff and Stavropoulos fraudulently conspired to forge the signature of Poulos on the will in order to obtain the inheritance. When the direct action was filed plaintiff requested Travelers to undertake his defense. Travelers refused to do so on the ground the direct action did not come within coverage of the policy.

Thereafter the probate action was amended to allege forgery of Poulos' will and falsification of the attestation clause. Plaintiff retained counsel to represent him in both the direct and the probate action.[1] Value of those services is not an issue in this appeal.

---

1. In addition plaintiff guaranteed payment to Stavropoulos' attorneys for continuing the defense in the probate case. Plaintiff did so on the advice of his attorneys because Stavropou-

Both actions were disposed of favorably to this plaintiff. In the direct action we ordered the granting of summary judgment on the ground the will was not subject to collateral attack. *Gigilos v. Stavropoulos*, 204 N.W.2d 619 (Iowa 1973). In the probate action the jury returned a verdict against the claimants. The jury found there had been no forgery. That judgment was affirmed on appeal. *In re Estate of Poulos*, 229 N.W.2d 721 (Iowa 1975).

It is not disputed that plaintiff properly notified Travelers of the actions against him and requested a defense. Neither is it disputed that, after the company refused to defend, plaintiff paid his attorneys.

There is no claim or showing Travelers would have been liable under the policy to pay the subject claim in either the probate or direct suit.

I. Plaintiff builds his argument on the language quoted from the insuring agreement which provided, not only for payment of covered claims, but also obligated the company to defend against them " * * * even if * * * groundless, false or fraudulent. * * *." Travelers, on the other hand, focuses on the quoted language from the exclusion provision which omitted coverage for " * * * any dishonest, fraudulent, criminal or malicious act or omission * * *." The inquiry becomes one of the relationship, if any, between these two provisions.

Plaintiff's position necessarily bifurcates the relationship between the duty to defend and the exclusion. He believes the duty to defend is not limited by, and certainly not geared to, the exclusion provision.

Under Travelers' view the duty to defend is only as broad as the liability protection of the policy. It believes there can be no duty to defend for a claimed dishonest act because there is no way under the policy it could be made to pay a loss for a dishonest act.

We seem never to have been called upon to answer the precise question in Iowa. However, looking to the authorities elsewhere, it seems a clear majority hold there is no duty to defend against a claim wholly outside the liability coverage. In deciding whether an insurer has a duty to defend, the first query is into plaintiff's pleadings to see if the pleadings state facts which bring the claim within the liability covered by the policy. 7A Appleman, Insurance Law and Practice, § 4683, p. 436 (Second Ed. 1962).

The cases were summarized in 44 Am. Jur.2d, Insurance, § 1539, pp. 420–421 as follows:

"Upon the basis of the allegations of the complaint or petition, the courts have adopted the following tests for determining whether particular allegations require the insurer to defend the action brought against the insured: if the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action; but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation, at least initially. Stated differently, the insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case. The duty to defend does not depend upon the insurer's liability to pay, however, since the insurer's duty to defend stems from its own contractual obligation to the insured, while its ultimate liability to pay on behalf of the insured depends upon the law of negligence, and since the usual policy provisions requiring the insurer to defend cannot be construed to impose such a duty only in the case of successful suits against the insured. Accordingly, the insurer may be obligated to defend although not held liable to pay. In other words, the insurer may be

los was out of money and his attorneys threatened to withdraw. It was the professional judgment of plaintiff's attorneys that an adverse decision in the probate case would be seriously detrimental to his position in the di-

rect action. There is no reason for us to reach the separate question relating to the fees for Stavropoulos' attorneys. We agree with the trial court that no attorney fees can be collected from Travelers under the policy.

obligated to defend so-called 'groundless' suits—namely, suits the allegations of which bring them within the coverage of the policy, but which are decided in favor of the insured. Conversely, in a few cases the insurer was held not obligated to defend because the allegations of the complaint did not bring the case within the coverage of the policy, but was held liable to pay because later developments showed that the case actually was covered by the policy."

See also 45 C.J.S. Insurance § 926, pp. 1044–1045:

" * * * The insurance company is not liable for expenses beyond the purview of the policy, as in the case of costs and expenses incurred by insured in defending against a claim which is not covered by the policy; but it may be liable for all of the expenses of the defense, notwithstanding the action includes claims that are not covered by the policy as well as some that are, where it does not appear that the amount expended was not necessary to establish the defense to the claims covered. * * *." See also Annots. 49 A.L.R.2d 694, 700; 50 A.L.R.2d 458, 463–464.

Of course the cases are not unanimous. *Conner v. Transamerica Insurance Company*, 496 P.2d 770 (Okl.1972) clearly supports the position taken by plaintiff in the instant case. Cf. *Gray v. Zurich Insurance Company*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). However we think the great weight of authority supports the view of the trial court herein which generally limits the obligation to defend to those claims which would be covered under the liability policy.

We also agree with the trial court that the doctrine of reasonable expectations as defined in *C & J Fert., Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 176 (Iowa 1975) and *Rodman v. State Farm Mutual Automobile Ins. Co.*, 208 N.W.2d 903, 906–908 (Iowa 1973) is not applicable. In *Rodman* we refused to extend the doctrine to cases where an ordinary layman would not misunderstand his coverage from a reading of the policy and where no circumstances appear attributable to the insurer which would foster coverage expectations. There

is nothing in the record in the instant case which indicates Travelers by its conduct led plaintiff to expect he might be defended for claims which reach beyond the policy's liability coverage. Neither does the language of the policy lend itself to such an expectation.

■ The language extending the duty to defend to "groundless, false or fraudulent" suits does not contravene, nor even conflict with, the exclusion clause. Groundless suits, under this provision, are those with allegations which bring them within the coverage of the policy but fail in law or in their proof. *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382, 29 Ohio Ops. 563, 59 N.E.2d 199 (1945). False or fraudulent suits, under the provision, are those which are falsely or fraudulently brought; they are not those in which false or fraudulent conduct is charged against the insured. The provision extending coverage to "groundless, false or fraudulent" claims then merely means there is a duty to defend even though there may be no factual or legal basis for the suit and even where the claimant brings them falsely or fraudulently. The language does not import a duty to defend where there is no claim within the liability coverage.

AFFIRMED.