**NORTH IOWA STATE BANK, Appellant,**

v.

**ALLIED MUTUAL INSURANCE COMPANY, Formerly Aid Insurance Company, Appellee.**

No. 90–268.

Supreme Court of Iowa.

June 19, 1991.

As Corrected June 26, 1991.

H.P. Folkers, Mason City, and Robert M. Austin and Jerome B. Abrams, Minneapolis, Minn., for appellant.

Marsha Ternus of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN and ANDREASEN, JJ.

SCHULTZ, Justice.

Plaintiff, North Iowa State Bank (bank), incurred liability when borrowers, the Kloosters, recovered a judgment against the bank. *See Klooster v. North Iowa State Bank,* 404 N.W.2d 564 (Iowa 1987). The bank commenced the present action against its liability insurance carrier, defendant Allied Mutual Insurance Company (Allied), seeking reimbursement of the amount of settlement it paid to discharge the judgment, attorney fees incurred in a prior declaratory judgment action, and punitive damages. Following trial to the court, plaintiff's petition was dismissed and judgment entered for defendant. We affirm.

The genesis of this action is previous litigation between the bank and members of the Klooster family. *See id.* The Kloosters sued the bank for actual and

punitive damages resulting from the attachment and sale of their swine herd. Following a trial, the jury returned findings in favor of the Kloosters and awarded actual and punitive damages on the following theories of recovery: (1) wrongful attachment; (2) conversion; (3) disposition of collateral in other than a reasonably commercial manner; (4) abuse of process; (5) tortious interference with a business relationship; and (6) violation of civil rights under 42 U.S.C. section 1983. The trial court believed that the verdicts were duplicative of each other and reduced the judgment to the amount of: (1) actual damages recovered for wrongful attachment; (2) emotional distress damages recovered under the civil rights violation; and (3) the highest of the several punitive damages awards.

On appeal, we held that the bank was entitled to a directed verdict on the wrongful attachment, tortious interference, and section 1983 theories of recovery. *Klooster*, 404 N.W.2d at 568–70. We affirmed the jury's verdict allowing plaintiff to recover $145,000 in actual damages and $100,000 in punitive damages on its claim of disposition of collateral in other than a reasonably commercial manner. *Id.* at 572. Although we did not hold that the bank was entitled to a directed verdict on the conversion and abuse of process theories of recovery, we did not order retrial on these two theories. *Id.*

When the Kloosters commenced litigation, the bank sought protection for its liability exposure by making a demand that Allied defend the bank and assume any loss resulting from the litigation. Allied's position was that the insurance policy covered only the tortious interference with a business relationship theory of recovery. Consequently, Allied provided an attorney to assist in only defending this claim. On all other theories advanced by the Kloosters, Allied denied the bank coverage and refused to provide a defense.

Prior to our ruling in *Klooster*, the bank commenced a declaratory judgment action seeking a determination of the extent of coverage afforded by the liability policy it held with Allied. That action was tried to the court shortly after we issued our decision in *Klooster*. The trial court ruled that Allied had a duty to defend the bank and that the policy provided coverage for all theories of liability advanced by the Kloosters with the exception of disposition of collateral in other than a reasonably commercial manner. Both parties dismissed their respective appeals from that ruling. Allied then reimbursed the bank for costs the bank incurred in defending and appealing the *Klooster* case.

The issue of Allied's responsibility for payment of the judgment awarded the Kloosters was not resolved and became the issue in this action which was tried to the court at law. The trial judge, different from the judge sitting on the declaratory judgment action, dismissed the bank's claim against Allied for the sum it was forced to pay the Kloosters. The court ruled that the judgment was rendered on a theory that was not covered under the policy, disposition of collateral in other than a reasonably commercial manner. The court found that the bank had not met its burden of proving its claim for attorney fees and punitive damages arising out of its allegation that Allied acted in bad faith and was stubbornly litigious.

On appeal, the bank challenges the trial court's ruling denying recovery of: (1) the sum of money paid to discharge the *Klooster* judgment; (2) attorney fees incurred in prosecuting the declaratory judgment action; and (3) punitive damages based on Allied's alleged bad faith. We address the bank's contentions in turn.

I. *Liability under the insurance policy.* The bank maintains that Allied's policy covers the bank's loss arising from the *Klooster* judgment. Resolution of this issue requires an examination of the terms of the policy and the character of the judgment. To resolve this issue, we must examine the policy to determine the extent of coverage and whether the bank's payment of the judgment fell within that coverage.

The relevant language from the comprehensive general liability policy provides that Allied "will pay on the behalf of the

insured all sums which the insured shall become legally obligated to pay as damages because of [bodily injury or property damage] to which this insurance applies...." Thus, the insured must establish that Allied has a legal obligation to pay the judgment by showing that the insurance policy applies or covers this obligation.

■ The term "legally obligated" is explained by a condition which provides that "[n]o action shall lie against the Company ... until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company." In the absence of an agreement to the contrary, such a condition in a liability policy requires that no action may accrue against an insurer on a covered claim until the amount of the loss has been determined by a judgment against the insured. *See Clark v. Bellefonte Ins. Co.,* 113 Cal.App.3d 326, 336–37, 169 Cal.Rptr. 832, 838 (1980); *Coil Anodizers, Inc. v. Wolverine Ins. Co.,* 120 Mich.App. 118, 122, 327 N.W.2d 416, 418 (1982); *Bacon v. American Ins. Co.,* 131 N.J.Super. 450, 459, 330 A.2d 389, 394–95 (Law Div.1974), *aff'd* 138 N.J.Super. 550, 351 A.2d 771 (App.Div.1976); J. Appleman & J. Appleman *Insurance Law & Practice* § 4851, at 479 (1981); 11 *Couch on Insurance 2d* § 44:319, at 494 (1982); 43 Am.Jur.2d *Insurance* § 713, at 772–73 (1982); *see also Kester v. Travelers Indem. Co.,* 257 Iowa 1146, 1150, 136 N.W.2d 261, 264 (1965).

Allied has not agreed that a covered liability exists; therefore, the first question is whether the judgment rendered against the bank is for the covered acts of conversion or abuse of process. In determining the ground for the judgment rendered in this case, we review the action of the trial court on remand and our ruling in *Klooster.* On remand, the trial court entered a judgment for damages against the bank on Kloosters' theory of sale in other than a reasonably commercial manner and directed verdicts against the Kloosters on all remaining theories.

■ The bank contends that the trial court did not have authority to direct verdicts on the conversion and abuse of process theories because our decision in *Klooster* affirmed the award on these theories. Since the parties disagree on the meaning of our decision in *Klooster,* we interpret its meaning. In interpreting the meaning of one of our prior decisions, we have broad latitude and are guided only by our view of its underlying intent. *Thomas v. Minner,* 340 N.W.2d 285, 286 (Iowa 1983).

In *Klooster,* the determination of damages created problems. At trial, the court allowed the jury to determine the damages on each theory of recovery. As a result, the jury returned special verdicts in various amounts on each theory for which the Kloosters sought recovery. In *Klooster,* we neither approved nor disapproved of the jury's separate determination of damages. Also, we did not speculate about why the amount of the jury's award varied with each count. Rather, we determined that the only special verdict that could stand without retrial was the award on the theory of sale in other than a reasonably commercial manner. *Klooster,* 404 N.W.2d at 572. We held that the Kloosters were entitled to a judgment on this verdict. *Id.*

In *Klooster,* we also held that the jury's award on the conversion and abuse of process theories could not stand because of erroneous instructions. *Id.* However, we directed no retrial on these two theories because any damages that might be awarded on retrial were already included in the verdict for sale in other than a reasonably commercial manner. *Id.* Even though we did not hold that the bank was entitled to a directed verdict on conversion or abuse of process, we determined that the trial court should not enter judgment on the jury's verdicts on these two counts or retry the case. *Id.* Thus, we do not agree with the bank's contention that our *Klooster* decision affirmed the jury's award of damages on the conversion and abuse of process theories of recovery. As a result, the bank has never had a judgment entered against it for conversion or abuse of process.

The bank's contention that the trial court erred by directing verdicts on the conversion and abuse of process counts on remand provides the bank with no additional support for its claim that the policy covered the loss arising from the *Klooster* judgment. Perhaps in its remand order, the trial court should have dismissed, rather than directed verdicts on these two counts. However, the outcome is the same.

In summary, the only judgment rendered against the bank was on the theory of sale in other than a reasonably commercial manner. The declaratory judgment ruling determined that this theory of recovery was not covered as a loss under the policy. Accordingly, we hold that the judgment of the trial court dismissing the portion of the bank's action seeking coverage under the insurance policy is affirmed.

II. *Bad faith.* The bank alleges that Allied acted in bad faith in making its decision to limit its coverage and defense to only one of the six theories of recovery. The bank contends that it should be awarded attorney fees incurred in the declaratory judgment action brought to establish the extent of the policy's coverage and punitive damages because Allied acted in bad faith and was stubbornly litigious. The trial court held that Allied's decision not to defend the bank and assume coverage, although mistaken in part, was a fairly debatable issue and did not support a finding that Allied acted in bad faith or was stubbornly litigious. Consequently, the trial court dismissed the bank's claims based on bad faith and stubborn litigiousness.

In a law action, the trial court's findings of fact are binding on appeal if supported by substantial evidence; however, we are not bound by the trial court's determination and application of legal principles. *In re Mt. Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988). In the present action, the bank challenges the trial court's adoption of legal principles and also claims that substantial evidence does not support the court's findings of fact.

We first turn to the bank's claim of legal error. The bank urges that the trial court erred in determining that Allied could not be guilty of bad faith by applying a fairly debatable standard—the standard required of a casualty insurer in a first-party claim with its own insured. Rather, the bank contends that the trial court should have applied the same standard of conduct required of a liability insurer in representing its insured against a third-party claim.

We have allowed application of different standards for tort recovery in bad-faith actions against an insurer depending on the type of claim presented and the conduct required of the insurer. *See Pirkl v. Northwestern Mut. Ins. Ass'n*, 348 N.W.2d 633, 635 (Iowa 1984). We have recognized a bad-faith cause of action in an insurer's representation of an insured in a third-party liability claim. *Wierck v. Grinnell Mut. Reinsurance Co.*, 456 N.W.2d 191, 194–95 (Iowa 1990); *Pirkl*, 348 N.W.2d at 635–36; *Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 34–37 (Iowa 1982). We have reasoned that the insurer, in handling a claim which might exceed the policy, owes a fiduciary duty to the insured to act responsibly in settlement negotiation to prevent exposure of the insured to unreasonable risk. *Wierck*, 456 N.W.2d at 194–95. This places a duty on the insurer to investigate the claim and take affirmative action as necessary to protect the interest of the insured. *Pirkl*, 348 N.W.2d at 635.

Recently, we have recognized that an insurer may be responsible for the tort of bad faith in first-party situations in which the dispute involves the insured's right to recover under the policy. *Dirks v. Farm Bureau Mut. Ins. Co.*, 465 N.W.2d 857, 861 (Iowa 1991); *Kiner v. Reliance Ins. Co.*, 463 N.W.2d 9, 12 (Iowa 1990); *Kirk v. Farm & City Ins. Co.*, 457 N.W.2d 906, 910–11 (Iowa 1990); *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). In *Pirkl*, we described the insurer-insured relationship in a first-party situation as being an arm's-length relationship. 348 N.W.2d at 635. In a first-party action, the "insurer has no clearly defined duty of investigation [as in a third-party claim] and may require the insured to present adequate proof of loss before paying the claim." *Id.* Finally, we have held that the insurer is not respon-

sible in a first-party bad-faith claim if the claim is fairly debatable. *Kiner*, 463 N.W.2d at 12 (citing *Dolan*, 431 N.W.2d at 794).

■ We do not find merit in the bank's contention that the legal standards for third-party claims should be applied in this case based on the fact that liability, rather than casualty coverage of property, is involved. The fiduciary duty required of an insurer in a third-party claim arises only when the insured is required to represent the insured's position against a third party. *See Pirkl*, 348 N.W.2d at 635. In a first-party claim, as in this case, the insurer occupies the same arm's-length position in relation to an insured that it occupies when the insurer challenges an insured's coverage of casualty losses. *See id.* Consequently, we hold that the trial court correctly examined the fairly debatable issue in this first party claim and applied the correct legal standards in deciding the bank's bad-faith claim.

■ Since we find that the trial court applied the correct legal standards, we now determine whether the bank has established the requisite elements of a bad-faith claim in a first-party situation. In *Kiner*, we set out the elements of a first-party bad-faith claim. *Kiner*, 463 N.W.2d at 12–13. Essentially, we stated that the insured had the burden of proof to show "that the insurer denied the claim knowing or having reason to know that its denial is without basis." *Id.* at 13. In examining the trial court's ruling, we believe that the trial court applied this standard of proof. The trial court made elaborate findings of fact indicating that the disputed questions of coverage are fairly debatable and that the decision reached by Allied's claims personnel in 1981 was appropriate and reasonable. The trial court concluded that Allied exercised an appropriate standard of consideration for the interests of the bank, regardless of whether Allied's conduct was judged by a third-party or first-party standard.

We have examined the record in this case and conclude, without further elaboration, that the record contains substantial evidence to support the trial court's findings. Consequently, we hold that the trial court's determination that Allied was not guilty of bad faith should be affirmed.

Furthermore, the trial court entered similar findings favorable to Allied on the issue of stubborn litigiousness and the bank's entitlement to punitive damages. We find that substantial evidence also existed to support these findings.

We have not addressed all of the parties' contentions. However, we have considered all issues presented and conclude that the trial court should be affirmed.

III. *Conclusion.* In summary, we conclude that the trial court did not err by holding that the bank did not establish a right of recovery against Allied under the liability insurance policy for claims growing out of the bank's litigation with the Kloosters. We also hold that the trial court did not err in dismissing the bank's tort action based on Allied's alleged bad faith and stubborn litigiousness. We further hold that the bank is not entitled to recover either the attorney fees incurred in prosecuting the declaratory judgment action or punitive damages.

AFFIRMED.