EMPLOYERS MUTUAL CASUALTY
COMPANY, Appellant,

v.

CEDAR RAPIDS TELEVISION
COMPANY, Appellee.

No. 95–787.

Supreme Court of Iowa.

July 24, 1996.

Rehearing Denied Sept. 13, 1996.

Mark L. Tripp and Barbara A. Hering of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Richard G. Hileman, Jr., and Stephen J. Holtman of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellee.

HARRIS, Justice.

This dispute concerns whether an insurer's duty to defend continues after dismissal of certain counts in the petition. The insurer contends the obligation to defend ended with the dismissal of those counts that squared with listed coverages in the policy. The trial court ruled otherwise and we agree.

In the underlying case of *Bond v. Cedar Rapids Television Co.*, 518 N.W.2d 352 (Iowa 1994), we reversed a plaintiff's judgment in a suit for tortious interference with a contract. The present plaintiff, Employers Mutual Casualty Company (Employers), was the insurer of Cedar Rapids Television Company (CRTV). CRTV was defendant in both the *Bond* case and in this one.

The *Bond* case arose from competing attempts to purchase DTV, a Dubuque television station. After CRTV extended an unsuccessful bid, DTV entered a written contract of sale with Sage Broadcasting Company. The contract provided that either party could terminate the agreement if the Federal Communications Commission (FCC) did not approve a broadcasting license transfer within 180 days. DTV promptly applied to the FCC for authority to assign its license to Sage.

CRTV, in the move that precipitated the *Bond* case, filed a petition with the FCC seeking denial of the license assignment. The FCC ultimately found that CRTV had not established the transfer to be against the public interest, and allowed the assignment. Three times while the matter was pending before the FCC, DTV and Sage agreed to contract extensions. But the last of the three extensions expired before final FCC action, and Sage terminated the contract.

Disconcerted by CRTV's conduct, DTV and its general partner, Thomas G. Bond, brought the *Bond* suit, alleging CRTV's FCC filings caused the anticipated sale of the station to fall through. The *Bond* petition was in four counts: (1) tortious interference with existing contract; (2) abuse of process; (3) malicious prosecution; and (4) intentional infliction of emotional distress.

Upon being notified by CRTV of the suit, Employers hired the law firm of Pickens,

Barnes & Abernathy to defend subject to a reservation of rights. Employers based its decision to defend on the *Bond* plaintiff's allegations of malicious prosecution, which it recognized might be covered under the personal injury coverage provisions of CRTV's policy. Employers took the position, however, there was no coverage for the other counts. Due to Employers' reservation of rights, CRTV elected to hire its own regular counsel, the law firm of Simmons, Perrine, Albright & Ellwood, to assist in the defense. Before trial CRTV requested that Employers substitute the Simmons firm for the Pickens firm as defense counsel, but Employers declined. Both firms continued as counsel of record, with CRTV paying Simmons' fees and Employers paying Pickens' fees.

On the eve of trial, DTV withdrew its claims of abuse of process, malicious prosecution, and intentional infliction of emotional distress. Because the malicious-prosecution claim was withdrawn, Employers withdrew the Pickens firm and discontinued paying attorney fees. The case went to trial before a jury, which awarded $2.1 million on the interference claim and $10,000 to Bond individually for his emotional distress. CRTV appealed and DTV cross-appealed.

At this point Employers filed the present action seeking a declaratory judgment that it was not responsible under the policy to indemnify CRTV for the judgment entered in favor of DTV, or for either trial or appellate defense costs. After issues were joined in the present suit, we considered CRTV's appeal (which Employers also refused to defend) and, as mentioned, reversed the judgment. The question of Employers' duty to indemnify thus became moot. Both parties in the present case then moved for partial summary judgment on the issue involved here: Employers' duty to defend the DTV lawsuit after withdrawal of the malicious-prosecution claim.

The parties stipulated that CRTV incurred $354,393.83 in defense costs after Employers withdrew counsel. The district court found Employers had a duty to defend all claims and entered judgment for CRTV in that amount plus interest. The case is before us on Employers' appeal.

I. The case was tried at law, so our review is for correction of errors. Iowa R.App. P. 4. On appeal from a district court ruling granting summary judgment, our task normally is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. *Lihs v. Lihs*, 504 N.W.2d 890, 892 (Iowa 1993). But here the facts are not in dispute, so we only need address Employers' assignments of legal error.

■ II. Although CRTV alleges coverage under either of two policy provisions, we find coverage on one (coverage B) [1] and therefore, like the trial court, we do not consider the second suggested provision.

Employers argues DTV's withdrawal of the malicious prosecution claim "untriggered" its duty to defend because none of the enumerated personal-injury offenses continued to be implicated (*i.e.*, the sole theory upon which the case was tried was tortious interference with contract, an unlisted offense). CRTV, on the other hand, claims Employers' duty to defend *continued* because the factual circumstances underlying the interference-with-contract count arose out of the alleged malicious prosecution (*i.e.*, the FCC filings). CRTV focuses its claim under coverage B on language taken from the insuring agreement, which specifies it applies only to offenses "[a]rising out of the conduct of your business...." Coverage B's exclusion provisions likewise point to conduct "arising out of" various conducts, not theories of liability.

III. We have described an insurer's general duty to defend this way:

An insurer's duty to defend is separate from its duty to indemnify; the duty to defend is broader than the duty to indemnify. The duty to defend arises "whenever there is potential or possible liability to indemnify the insured based on the *facts* appearing at the outset of the case." In other words, *the duty to defend rests solely* on whether the petition contains any allegations that *arguably* or *potentially* bring the action within the policy coverage. If any claim alleged against the insured can rationally be said to fall within such coverage, the insurer must defend the entire action. In case of doubt as to whether the petition alleges a claim that is covered by the policy, the doubt is resolved in favor of the insured.

*A.Y. McDonald Indus., Inc. v. Insurance Co. of N. Am.*, 475 N.W.2d 607, 627 (Iowa 1991) (en banc) (citations omitted) (emphasis added).

Although Employers thinks otherwise, we are convinced that, proceeding as they do from common facts, the claim for intentional interference with a contract was bound up together with the claim for malicious prosecution. We note and approve the following:

The bulk of the cases involving interference ... also involved the commission of some independent tort.... Thus in many cases interference with contract is not so much a theory of liability in itself as it is an element of damages resulting from the commission of some other tort....

W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* ch. 24 § 129, at 992 (5th ed.1984).

1. The relevant provision states:
COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.
1. Insuring agreement.
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies....
b. This insurance applies to "personal injury" only if caused by an offense:
(1) Committed in the "coverage territory" during the policy period; and
(2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

The policy defines "personal injury" this way:
10. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:
a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;
d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
e. Oral or written publication of material that violates a person's right of privacy.

We understand the question to be, in the light of the rule just quoted from *A.Y. Mc-Donald Industries,* whether an insurer has a duty to defend an action brought by a plaintiff based on a theory of recovery not mentioned among those listed for coverage in the policy, when the operative facts contain allegations of conduct expressly covered in the policy. We believe this exact question is one of first impression with us.[2]

It is important that the issue concerns a duty to defend, rather than a duty to indemnify. The duty to defend is treated differently because "[a]n insurer's duty to defend is separate from its duty to indemnify; the duty to defend is *broader* than the duty to indemnify." *A.Y. McDonald Indus.,* 475 N.W.2d at 627 (emphasis added). *See also First Newton Nat'l Bank v. General Cas. Co.,* 426 N.W.2d 618, 630 (Iowa 1988); *McAndrews v. Farm Bureau Mut. Ins. Co.,* 349 N.W.2d 117, 119 (Iowa 1984). This difference between the duty to defend and the duty to indemnify "exists because it is impossible to determine the basis, if any, upon which the plaintiff will recover until the action is *completed."* *First Newton Nat'l Bank,* 426 N.W.2d at 630 (emphasis added).

■ In determining whether there is a duty to defend we look "first and primarily to the petition for the 'facts at the outset of the case.'" *First Newton Nat'l Bank,* 426 N.W.2d at 623 (citation omitted).

"[An insurer's] duty to defend arises whenever there is a potential or possible liability to pay based upon the *facts* at the outset of the case...." The "facts at the outset

of the case" under this test have traditionally been those alleged in the petition in the suit against the insured.

*McAndrews,* 349 N.W.2d at 119 (emphasis added). "In deciding whether an insurer has a duty to defend, the first query is into plaintiff's pleadings to see if the pleadings state *facts* which bring the claim within the liability covered by the policy." *Chipokas v. Travelers Indem. Co.,* 267 N.W.2d 393, 395 (Iowa 1978) (emphasis added).

Thus it is clear under Iowa law that an insurance company is to look at the *allegations of fact* in the third-party plaintiff's petition against the insured and *not* the legal theories on which the third-party claims insured is liable. Thus it should be irrelevant that DTV, the third-party plaintiff in *Bond,* changed their petition on the eve of trial to allege a different legal theory of liability against CRTV. The facts alleged still would have met the elements required for malicious prosecution, and thus the insurance company still had a duty to defend the lawsuit.

Better reasoned cases from other jurisdictions are in accord. As was stated in *Titan Holdings Syndicate v. City of Keene, New Hampshire:*

In deciding the scope of a liability policy's coverage, a court must compare the policy language with the *facts* pled in the underlying suit to see if the claim falls within the express terms of the policy; the legal nomenclature the plaintiff uses to frame the suit is relatively unimportant.

898 F.2d 265, 271 (1st Cir.1990) (applying New Hampshire law); *see also Curtis–Uni-*

---

2. Employers contends otherwise, citing the cases of *Kibbee v. State Farm Fire & Casualty Co.,* 525 N.W.2d 866 (Iowa 1994), and *North Iowa State Bank v. Allied Mutual Insurance Co.,* 471 N.W.2d 824 (Iowa 1991). The issue in *Kibbee* was whether language providing coverage for the listed offense of "malicious prosecution and humiliation" could be construed as encompassing the unrecognized tort of "malicious humiliation" (which the insured claimed was the equivalent of intentional infliction of emotional distress). 525 N.W.2d at 868. We held it could not. *Id.* at 869–70. *North Iowa State Bank* arose from a complicated procedural morass stemming from a judgment entered against the insured, plaintiff bank. The bank's claim in *North Iowa State Bank* seeking reimbursement from its insurer for this judgment amounted to a collateral attack

upon an unappealed judgment of the district court in a prior declaratory judgment action. *See* 471 N.W.2d at 828 (stating the only judgment rendered against the bank was on the theory of sale in other than a reasonably commercial manner, and the declaratory judgment ruling determined that this theory of recovery was not covered as a loss under the policy; accordingly, we affirmed the judgment of the trial court dismissing the portion of the action seeking coverage under the insurance policy). The issue whether the insured's policy provided coverage for the identical conduct of the insured, depending upon what legal theory the plaintiff chose to have submitted to the jury, was simply never addressed in either case.

We do not find these cases controlling.

versal v. Sheboygan Emergency Medical Serv., Inc., 43 F.3d 1119, 1122 (7th Cir.1994) (applying Wisconsin law, and finding an antitrust action potentially within the terms of coverage for unfair competition); Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832 F.2d 1037, 1043–44 (7th Cir.1987) (applying Illinois law, and finding anti-trust and deceptive trade practices action potentially within the terms of coverage for defamation); Jefferson–Pilot Fire & Cas. Co. v. Boothe, Prichard & Dudley, 638 F.2d 670, 674–75 (4th Cir.1980) (applying Virginia law, and finding anti-trust action potentially within the terms of coverage for malpractice arising out of the provision of professional services); Colton v. Swain, 527 F.2d 296, 304 (7th Cir. 1975) (applying Illinois law, and finding a civil rights action under 42 U.S.C. § 1983 within the terms of coverage for false arrest and malicious prosecution); Ethicon, Inc. v. Aetna Cas. & Surety Co., 737 F.Supp. 1320, 1329 (S.D.N.Y.1990) (applying New Jersey law, and finding anti-trust action potentially within the terms of coverage for malicious prosecution); Ruder & Finn, Inc. v. Seaboard Sur. Co., 52 N.Y.2d 663, 439 N.Y.S.2d 858, 862–63, 422 N.E.2d 518, 522–23 (1981) (applying New York law, and finding unfair competition action potentially within the terms of coverage for libel).

▮ A careful examination of the DTV lawsuit revealed allegations which, if proven true, would show CRTV committed the offense of malicious prosecution. Because malicious prosecution was specifically listed in the insurance policy, if there were elements alleged in the petition proving malicious prosecution, then Employers had a duty to defend. The elements of malicious prosecution are as follows: (1) a previous prosecution; (2) investigation of that prosecution by the defendant; (3) termination of that prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice on the part of the defendant for bringing the prosecution; and (6) damage to the plaintiff. Wilson v. Hayes, 464 N.W.2d 250, 259 (Iowa 1990). This damage to the plaintiff must be for an arrest of the person, seizure of property or special injury—injury that would not ordinarily result in all similar cases involving such a claim. Royce v. Hoening, 423 N.W.2d

198, 200 (Iowa 1988); Aalfs v. Aalfs, 246 Iowa 158, 160, 66 N.W.2d 121, 124 (1954).

In the petition for intentional interference with existing contract, the third-party plaintiff DTV alleged (a) it was required to be a defendant in a civil proceeding before the FCC (paragraph 10); (b) the proceeding was initiated by a petition filed by CRTV (paragraph 10); (c) DTV prevailed in that proceeding (paragraph 15); (d) CRTV had no basis for filing the petition (paragraph 11–12); (e) the action was malicious because it was done for the sole purpose of interfering with DTV's contract for sale with Sage (division II, paragraphs 2–4); and (f) DTV suffered damages as a result thereof (paragraph 14).

The damages DTV alleged it suffered in its petition, loss of the sale price from the contract with Sage, arguably and/or potentially qualified as special damages required for a malicious prosecution claim. Plaintiffs have recovered on malicious prosecution claims for special injury when proceedings were brought that interfered with the possession, use, or enjoyment of property by injunction. See 52 Am.Jur.2d Malicious Prosecution § 11, at 194 (1970); see also 54 C.J.S. Malicious Prosecution § 15, at 534 n. 68 (1987) (describing "wrongful interference with possession or enjoyment of property" as qualifying for special injury). At least arguably or potentially (all that is required by A.Y. Mc-Donald Industries) the third-party plaintiff, DTV, had a possible malicious prosecution cause of action against the insured, CRTV.

Thus the petition contained factual allegations which if proven would support a claim for malicious prosecution. Employers had a duty to defend because of the teaching of A.Y. McDonald Industries that "the duty to defend arises ... based on the facts appearing at the outset of the case." A.Y. Mc-Donald Indus., 475 N.W.2d at 627; see also First Newton Nat'l Bank, 426 N.W.2d at 623.

▮ In approving the logic of the foregoing, we cannot improve on the language of the trial court, which we quote and adopt as our own:

The insured can control his own conduct and insure against damages arising from

such conduct. An insured has no control over which of possibly several applicable legal theories a plaintiff may choose to invoke in a lawsuit against him. It would be inequitable to allow the plaintiff to determine whether the defendant is or is not insured simply by the choice of legal theories under which he brings suit. Insurance coverage is predicated on the assessment of the risk involved should the insured participate in a particular type of conduct and not the risk of the plaintiff's choice of legal theories.

The judgment of the trial court is accordingly

**AFFIRMED.**

All justices concur except CARTER, NEUMAN and ANDREASEN, JJ., who dissent, and TERNUS, J., who takes no part.

CARTER, Justice, dissenting.

I dissent. The district court and this court's majority have overreacted to appellee's plaintive lament that the question of whether an alleged tortfeasor is insured should not be determined by the plaintiff's choice of legal theory. The district court reacted to this lament by declaring that:

> Insurance coverage is predicated on the assessment of the risk involved should the insured participate in a particular type of conduct and not the risk of the plaintiff's choice of legal theories.

In fact, insurance coverages are determined by the terms of the contract, and liability policies frequently define coverages in terms of specific torts. As we noted in another recent coverage dispute:

> The policy defines the term "personal injury" in two ways. It lists specific types of damages that are personal injuries such as "bodily harm" and "mental anguish." It also lists specific torts—such as "false arrest," "slander" and "assault and battery"—that qualify as personal injury.

*Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994).

There are good reasons why insurers seek to tie liability coverages to the legal theory of recovery. The theory of recovery can directly affect the extent of the risk. Because some types of claims are more difficult to sustain than others, the ease of establishing liability will vary among legal theories. Moreover, certain legal theories involve an expanded measure of damages or, by their very nature, apply to factual situations that produce a much higher risk of exposure than other legal theories. This point is graphically illustrated by the present case in which business tort liability, which is traditionally broad, is contrasted with malicious prosecution damages that are traditionally narrow.

The decision of the court is clearly contrary to the position that we took in *North Iowa State Bank v. Allied Mutual Insurance Co.*, 471 N.W.2d 824 (Iowa 1991). In that case, certain plaintiffs had recovered damages from the insured on theories of conversion and abuse-of-process. The same award was also predicated on a jury's favorable finding on other legal theories. The conversion and abuse-of-process claims were covered by the liability policies. The claims based on other theories of legal liability were not. On appeal it was determined that, although a prima facie case had been presented on the conversion and abuse-of-process theories, the court's instructions on those theories were faulty. The trial was found to have been error-free on the other legal theories. Because the damages awarded under the other legal theories included all damages that could have been recovered for conversion or abuse of process, those issues were not retried.

If the theory now espoused by the majority had been applied in the *North Iowa State Bank* case, there clearly would have been coverage to indemnify the insured for the judgment entered on facts supporting recovery under covered legal theories. That these facts did support recovery under those theories was established by our determination on the appeal of the tort action that plaintiffs had made a prima facie case under those legal theories. Nevertheless, we held in the subsequent insurance coverage litigation that the policy only covered damages actually adjudicated by the court under covered legal

---

theories. *North Iowa State Bank*, 471 N.W.2d at 827.[1]

The *North Iowa State Bank* case applies a rule based on the legal theory under which damages are in fact awarded. The rule the district court applied and that the majority of this court would apply purports to turn on what damages might have been awarded under a legal theory covered by the policy if that claim *could have been made* on the facts of the case. Even that rule, however, does not support the result that the district court reached.

The Employers Mutual policy covers personal injury damages for malicious prosecution and makes no reference to business liability. There is a substantial question whether participation in a public hearing process conducted by a regulatory agency is the type of action that will support a malicious prosecution claim. *See Lebbos v. State Bar of California*, 211 Cal.Rptr. 847, 165 Cal. App.3d 656 (1985) (disciplinary investigation); *Greenberg v. City of New York*, 89 Misc.2d 803, 392 N.Y.S.2d 547 (1977) (internal affairs investigation of city employee).

In many jurisdictions, no civil action for malicious prosecution will lie unless there has been an arrest of the person or a seizure of property. *Aalfs v. Aalfs*, 246 Iowa 158, 160, 66 N.W.2d 121, 124 (1954). We have expanded the civil action slightly in this state to allow it to also lie for special injury to the party against whom an unfounded claim is made that would not ordinarily result in all similar cases involving such a claim. *Id.* The *Aalfs* case involved a malicious prosecution claim based on a prior unsuccessful action seeking rescission of a contract affecting a business. The court held that the consequential damages that befell the other contracting party as a result of the impact the suit had on the business did not constitute "special damages" because it was the normal and expected consequence of an action challenging a contract with a direct relation to the business.

A similar view of special injury for purposes of maintaining a civil malicious prose-

cution action is found in *Buck v. Gale*, 271 Or. 90, 530 P.2d 1248, 1249–50 (1975). In that case, the court held that the loss of sale of a business as a result of an unsuccessful civil action relating to the business was not an item of special damage because such a consequence would ordinarily flow from litigation of that type. The present case involved the loss of a sale of a business. The similarity of the *Buck* case and the present case on the special-damage issue is remarkable. Thus, while the majority urges that it is only finding coverage because the interference-with-business-relationship claim was pursued on facts that would also show malicious prosecution, that is not true. It was predicated on facts that clearly would not support a malicious prosecution claim. Because the coverage for malicious prosecution claims falls under the "personal injury" coverage of the policy, a forceful argument may ·be made that this coverage is limited to the narrow definition of malicious prosecution involving arrest of the person. But, even if the expanded definition of the *Aalfs* case is used, there was no malicious prosecution claim on the facts alleged by the appellee. This is because the "special injury" requirement is not a rule of damages but a substantive element of a civil claim for malicious prosecution. *Aalfs*, 246 Iowa at 160, 66 N.W.2d at 124. The effect of the majority's ruling is to make coverage available for a business tort of wide dimension when language of the policy only extends coverage to a personal injury tort of malicious prosecution, which is of narrow dimension. All of this is done notwithstanding the fact that the latter claim was not sustainable on the facts alleged in the petition.

Contrary to the majority's suggestion, the duty to defend and the duty to indemnify both depend on whether the policy extends to the claims presented. The determination of whether these duties exist will ordinarily be made at different times, however. If, while an action is pending, the pleadings or other circumstances suggest a possibility that the

---

1. The majority seeks to portray the *North Iowa State Bank* case as an unsuccessful collateral attack on an unappealed declaratory judgment. Clearly, it was not. The unappealed declaratory judgment had held that the conversion and abuse-of-process claims were covered by the policy. Thus, those issues were still available to be argued in the later coverage litigation.

plaintiff will ultimately recover under a theory embraced by the policy, then the insurer must defend that claim. In these ambiguous pleading situations, an insurer may be required to defend a suit that is not ultimately within the scope of its liability coverage. That result is justified by the insurer's duty to defend against frivolous claims of the type insured. In the present case, however, there was no ambiguity at the pleading stage. The tort of malicious prosecution had been clearly identified in the initial pleading and then cleanly and unequivocally withdrawn from the case.

It is important in deciding these matters not to confuse the obligation to pay for a defense with the obligation of a lawyer to show up at the counsel table. There may be situations in which coverage issues are not clarified early enough in a case to make it feasible for a particular attorney to withdraw from the case. This is a matter of trial administration and should not affect who is responsible to pay for the attorney's services. This situation is illustrated by a Florida appellate court decision. There, the court observed:

> It is the general rule that an original pleading is superseded by an amendment of it which does not express an intention to save any portion of the original pleading. Consequently, when an original complaint has been superseded by an amended complaint, the original complaint can no longer furnish a basis for determining the insurer's duty to defend. It follows, therefore, that where an amended complaint alleges facts that clearly bring the entire cause of action within a policy exclusion, and the amended complaint contains no additional counts or causes of action which show coverage, the allegations in the amended complaint control and the insurer's duty to defend comes to an end.

*Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So.2d 810, 815 (Fla.App.1985). The court then went on to hold that the insurer in the *Baron Oil Co.* case was required to reimburse the defendant for attorney fees for only those attorney fees incurred prior to the time that the complaint was amended to remove the covered claims from the case.

Because I find that the obligation of the insurer in the present case to defend its insured ended when the malicious prosecution claim was withdrawn, I would reverse the judgment of the district court.

NEUMAN and ANDREASEN, JJ., join this dissent.